[Civ. No. 3213. Third Appellate District.—November 20, 1928.]

THE GLADIUM COMPANY, INC. (a Corporation), Appellant, v. F. M. THATCHER, Respondent.

J. Oscar Goldstein for Appellant.

Guy R. Kennedy and George F. Jones for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment in favor of the defendant in an action for the purchase price of 4,501 pounds of steel alleged to have been sold and delivered.

The appellant is a corporation of the state of New York. Through its agent an order for the purchase of steel bars for foundry use was obtained from an employee of the respondent August 1, 1922. This order was written upon a form furnished by the respondent in the following language:

"Office of F. M. Thatcher.

"Order No. 8180.

"Sterling City, Cal., Aug. 1, 1922.

"To Gladium Company.

"Please forward supplies listed below, to Sterling City, Calif.; Invoice to Sterling City. Ship by S. P. Co., 4 bars 1″ x 10″ soft steel bumpers for car bunks; 4 bars ½″ x 10″ for plates; 2 bars 2½″ x 10″ round for hooks. Price 20 ¢ per pound.

"Approved,

"C. A. WILLIAMS, Manager."

On August 16, 1922, this order was shipped from New York by way of the Panama Canal. The evidence satisfactorily shows that this steel was delivered to respondent's mills in Sterling City, December 29, 1922. On January 1, 1923, for a consideration, respondent's mills, together with all equipment and supplies were transferred to the Diamond Match Company. This shipment of steel was never returned to the appellant, nor was it accounted for by the respondent. The evidence tends to prove that it was in fact conveyed to the Diamond Match Company upon the sale of respondent's mills. On September 22, 1922, after the steel had been shipped from New York, but before its arrival at Sterling City, the respondent wrote the appellant charging it with having procured the order for steel by means of misrepresentations, refusing to accept the shipment, and declaring that upon its arrival the steel would be immediately returned.

The respondent contends that his agent, Williams, had no authority to order the steel, and that he had no knowledge of its actual delivery, and did not know what had become of it. For years, however, Williams had acted as respond-

ent's bookkeeper and manager. A serious doubt is raised by the record as to whether an ostensible agency may not have existed which would have authorized the purchase of steel by Williams. He admitted that he signed the order for the steel, but asserted that he was persuaded to do so through the misrepresentations employed by the appellant's agent. Upon delivery of the goods, Williams also paid the Southern Pacific Company's freight bill for transportation Regarding his knowledge of the delivery and disposition of the steel, the respondent himself testified: "Q. I want to find out what became of the steel . . . (which was) delivered? A. I can tell you; the Diamond Match Company got it—no doubt they got that steel." The court, interrupting: "Q. Do you know whether it did or not? A. I don't know; to tell the truth, I don't know." Mr. Goldstein, interrogating the witness for appellant: "Q. When you quit business on the first day of January, 1923, did you turn over all the property you had to the Diamond Match Company for a consideration? A. Yes sir. Q. And that included all the steel you had on hand, and all the merchandise? A. Everything used in the operations." In further proof of the delivery of the steel in question, Mr. J. B. Barnes, the local agent of the Southern Pacific Company at Sterling City testified that ten bars of steel corresponding to the description of the goods in the written order and weighing 4,501 pounds were delivered at respondent's mills December 29, 1922. A receipt for the identical number of bars and the exact weight of the steel ordered was signed by respondent's agent Williams on that date, and was offered in evidence. Concerning appellant's offer of this shipping receipt, the following proceedings occurred in the examination of the agent Barnes: "Q. I show you a paper and ask you if that is the original receipt for the steel at Sterling City? A. Yes sir. . . . " Thereupon it was offered in evidence. The respondent objected to the offer on the ground that the receipt failed to identify the specific bars of steel in question, and because it did not contain the name of the shipper. ■ Appellant's attorney then offered to prove by this witness that the omitted name of the shipper was that of the appellant corporation, but was denied this privilege. Upon this subject the following colloquy occurred. The court asked the witness Barnes: "Q. Did you testify

that this was a shipment of the Gladium Company? A. *I can explain this to you.* No, I didn't testify that it was delivered by the Gladium Company—the freight bill doesn't show that." The court: "That is all." Mr. Goldstein: "Have him explain (that), he can explain about that receipt." The court: "That must stand on its face. . . . He cannot explain it. The motion is overruled." Mr. Goldstein then suggested that he could definitely prove that the steel bars described in the shipping receipt were the identical bars shipped from the Gladium Company to the respondent, and that the inventory of the stock transferred from the respondent to the Diamond Match Company would show that it received this steel. He said: "Now, if your Honor please, in view of your last question, I desire to state that I can definitely establish (the fact that) this steel was turned over to the Diamond Match Company, and, also, that it is the identical steel delivered by the Gladium Company, and I would like the court to give me a chance to do that. . . . " To this request the court replied: "The motion is overruled." From a fair reading of the record, there appears to be no reasonable doubt that the identical steel was in fact delivered to the respondent the day before his mill, equipment, and materials were conveyed to the Diamond Match Company for a consideration. Evidently the respondent himself believed this to be true. It was prejudicial error to deny the appellant the privilege of supplying the name of the shipper which was omitted from the receipt, for this was material evidence to establish the delivery of the steel. Both the questions regarding the delivery to, and the disposition of the property by the respondent were material in determining whether there was a legal acceptance of the property. The court found that the steel in question was neither sold nor delivered to the respondent.

It is an invariable rule that mere receipts for money or goods, as well as bills of lading, are subject to explanation by parol evidence. (4 Jones, Comm. on Evidence, p. 2985, sec. 1630, p. 3030, sec. 1652; *Comptoir D'Escompte de Paris* v. *Dresbach,* 78 Cal. 15 [20 Pac. 28] ; *San Pedro Lumber Co.* v. *Schroeter,* 156 Cal. 158 [103 Pac. 888] ; *Winans* v. *Hassey,* 48 Cal. 634; *Hawley & Co.* v. *Bader & Co.,* 15 Cal. 44.),

■ Had the appellant been permitted to establish not only the delivery of the steel to the respondent, but also his disposition of it, this evidence would furnish persuasive proof of acceptance. One who takes the delivery of personal property, pays the freight charges for its transportation, and either uses it for his own benefit or conveys it to another for a consideration, will be estopped from denying acceptance of the property. It is the duty of a consignee to promptly reject goods which are shipped to him, or he will be deemed to have accepted them. ■ It is true that when goods are not shipped f. o. b., and the right of inspection is reserved by the buyer, the title does not pass until he has had a reasonable opportunity to inspect the goods. In 23 Ruling Case Law, 1433, section 256, it is said:

"Where goods are shipped by car or vessel it seems to be generally recognized that the buyer is not required to make his inspection before removal of the goods from the car or vessel, but may remove them to a warehouse for such purpose, and such removal for the purpose of inspection alone does not constitute an acceptance." But in the absence of an agreement to the contrary, this right of inspection must be promptly exercised. (*Jackson* v. *Porter Land & Water Co.*, 151 Cal. 32, 39 [90 Pac. 122]; *Imperial Gas Engine Co.* v. *Auteri*, 40 Cal. App. 419, 424 [180 Pac. 946]; 52 A. L. R. 608, note.) ■ When goods are shipped without an agreement to purchase, or when they are materially defective in quality or quantity, as contrasted with the terms of the contract, they need not be accepted, and under such circumstances, the seller becomes a mere volunteer with respect to the shipment, while the consignee then becomes a bailee holding the property for the benefit of the owner, and while he need not necessarily return the property to the shipper, he must exercise reasonable care to preserve the property against loss or damage. (2 Williston on Sales, 2d ed., 1295, sec. 497.) ■ In the present case, an attempt was made on the part of the respondent to reject the goods, as his letter of September 22, 1922, indicates. But that letter was written after the goods were shipped from New York, and while they were in transit. This would not relieve the respondent from exercising reasonable care to preserve the property for the benefit of the appellant upon its delivery to him. Retaining the property or conveying it for

a consideration are acts indicating that he treated the property as his own, and would amount to an acceptance which would make the respondent liable for their value. (*Jones* v. *Werthan Bag Co.* (Mo.), 254 S. W. 4; *Reeding Steel Casting Co.* v. *United States*, 286 U. S. 186 [69 L. Ed. 907, 45 Sup. Ct. Rep. 469].) In 23 Ruling Case Law, 1434, section 257, it is said: "Without doubt the buyer's retention of the goods beyond a reasonable time for examination and communication with the seller, standing alone, will be regarded as warranting the conclusion that he has accepted the goods and thus become liable, especially if the delay has worked prejudice to the seller. . . . Receipt (of the goods) will become acceptance if the right of rejection is not exercised within a reasonable time, or if anything has been done by the buyer which he would have no right to do unless he were the owner of the goods." (23 R. C. L. 1436, sec. 259.)

The respondent contends that his manager, Williams, had no authority to purchase the steel in question. The record raises a serious doubt as to whether an ostensible agency for that purpose may not have existed. But, regardless of whether an ostensible agency existed, when, with full knowledge of the circumstances, one appropriates the property, or accepts the benefits of a transaction, he will be estopped from denying the authority of his agent through whom it was consummated. (Sec. 2310, Civ. Code; *Gardner* v. *City of Glendale*, 45 Cal. App. 641 [188 Pac. 307]; *Tomasini* v. *Smith*, 26 Cal. App. 227 [146 Pac. 691].) The record in the present case does not affirmatively show that the respondent had personal knowledge of the entire transaction, and the last-mentioned principle is merely announced for guidance of the court upon a new trial. In *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67 [34 Pac. 527], it is said: "That which a principal may authorize an agent to perform, he may ratify when performed by the latter without authority. And where, with full knowledge of all the facts involved, a principal reaps the fruits of the unauthorized contract of his agent, and for some time yields acquiescence to its provisions, he will be deemed to have ratified it, and will be estopped, as against one who has fully performed the contract on his part, from repudiating it to the injury of the latter." And in *Lawrence* v. *John-*

*son,* 131 Cal. 175 [63 Pac. 176], it was likewise held, where an officer had no power to assign certain pledges as security for a debt, that the principal could not retain the money received on the transfer of the pledges, and at the same time repudiate the transaction. In the present case, the respondent could not retain the proceeds of a sale of the steel bars in question, and at the same time deny the purchase thereof.

For the foregoing reasons the judgment should be reversed, and it is so ordered.

Plummer, J., and Hart, Acting P. J., concurred.