[S. F. No. 12967. In Bank.—June 24, 1930.]

H. WALKER, Respondent, v. KIMBALL FRUIT CO., INC., Appellant.

[Sac. No. 4431. In Bank.—June 24, 1930.]

D. G. WALKER, Respondent, v. KIMBALL FRUIT CO., INC., Appellant.

Heller, Ehrman, White & McAuliffe, Webster V. Clark, Geary & Geary and C. J. Tauzer for Appellant.

E. M. Norton, Robert Duncan, Karl Brooks, John L. Mc-Nab and Barnett & McConnell for Respondents.

CURTIS, J.—In these actions tried before a jury verdicts were rendered in favor of the plaintiffs, upon which judgments were entered against defendant. Motions for new trials were made and denied and the defendant has appealed.

The principal question presented on these appeals is as to the sufficiency of the evidence to support the judgments. The controversy involves two written contracts entered into by the defendant, one with the plaintiff H. Walker, and the other with the plaintiff D. G. Walker. The plaintiffs are father and son, and they are the owners of adjoining apple orchards situated in the county of Sonoma. By the contract with H. Walker the latter agreed to deliver one-half of his 1926 crop of apples grown on his orchard to the defendant to be marketed by the defendant for the account of the said H. Walker. By the contract with the plaintiff D. G. Walker, he agreed to deliver all of his 1926 crop of apples grown on his orchard to the defendant to be marketed by the defendant for the account of the said D. G. Walker. In each of these contracts, or at least in the copies of the contracts given to the plaintiffs, there was a clause or provision guaranteeing a minimum price which the apples would bring to the plaintiffs. These contracts were secured from the plaintiffs by Kemp Ross, the agent and representative of the defendant in Sonoma County, and were signed by him as such agent and representative. It is now, and has been, the contention of the defendant throughout this litigation, that Ross had no authority to include in said contracts, or in either of them, any covenant or agreement on behalf of the defendant guaranteeing that the plaintiffs would receive any definite amount for the apples delivered

by them to the defendant; that the defendant was a purely consignment company and confined its operations exclusively to doing a commission business. While the plaintiffs claim that the evidence shows that Ross had both actual and ostensible authority to enter into said contracts of guaranty, they further contend, even in the absence of any original authority in Ross to make such contracts, that the defendant ratified said contracts, and with full knowledge that they contained a clause guaranteeing a minimum price for the fruit accepted plaintiffs' fruit, and sold the same without ever making any objection to said contracts or notifying the plaintiffs that they would not be bound by their terms. If this contention of the plaintiffs can be maintained, then the question of Ross' authority to execute said contracts becomes a matter of no consequence. We will, therefore, consider first the contention of the plaintiffs that the defendant ratified said contracts. As the verdicts of the jury were against the defendant, we must assume that they found in favor of plaintiffs upon the issue of ratification. That being so, if there is any substantial evidence in support of this implied finding of the jury, it must be sustained by this court and in considering the evidence for this purpose we must resolve all conflicts therein in favor of upholding the verdicts of the jury.

The defendant is a corporation organized under the laws of the state of New York, but during the year 1926 had and maintained an office and place of business in the city of San Francisco. From this office it carried on an extensive business in shipping fruit from various localities in the state of California, and during said year Alexander Young was the general manager and agent of the defendant for the state of California and as such had charge of the office of the company and directed its affairs in the state of California. During the summer of 1926 Kemp Ross was the agent of the defendant company in soliciting business and procuring contracts for the shipment of fruit from the various growers in that part of Sonoma County in which the orchards of the plaintiffs were located. Ross testified that when he visited the orchard of H. Walker in May, 1926, with Mr. Kimball, the president of the Kimball Fruit Company, Inc., who was visiting California in the interest of his company, Mr. Kimball was much impressed with the

quality of Mr. Walker's fruit and said to Ross, "You get this crop regardless." He further testified that in a later conversation with Mr. Young, the managing agent of the defendant, Mr. Young had told him that the company had ordered too much shook and that he was afraid that they would not get apples enough to use up the shook. Mr. Young, so Ross testified, urged him to get more apples and "to get the apples regardless." After these conversations Ross, in behalf of the company, entered into with the plaintiffs the two contracts sued on. Ross testified that he prepared the contracts in triplicate, gave one copy to each of the plaintiffs, and immediately sent by mail the two originals to the office of the defendant in San Francisco, and kept copies for his own files. The contracts were dated in the early part of July. Mr. Young, the managing agent of the defendant, testified that he received the contracts by mail shortly after they were executed, opened the envelope containing the contracts, examined them to see whether or not they were acceptable to him, and then filed them away with many other contracts. After this time, and before any dispute arose between the parties hereto as to the validity of the contracts under which the plaintiffs claim, the fruit from the orchards of the plaintiffs was delivered to the defendant, and by the defendant shipped and sold. Mr. Young further testified that the contracts sent to him by Ross and which he received through the mail did not contain the clause guaranteeing a minimum price for the fruit, or any provision of guarantee whatever, and that the first he knew that the plaintiffs made any such claim was some time in September, 1927, when he received letters from the plaintiffs with reference to the matter. The contracts produced by him showed that they had at some time been changed, and the words "shipper to furnish W. W. boxes for picking in" were written in the contracts held by him at the place where in the copies of the contracts given to the plaintiffs the guarantee clause had been written. Mr. Young was clear and positive in all of his statements. On the other hand, Ross positively stated that the contracts mailed to Young were in the exact language as the copies of the contracts which he delivered to the plaintiffs, and that no change had been made in the contracts sent to Young prior to their being mailed to Young by Ross. This

whole matter was thoroughly gone into at the trial by both parties, and all the evidence was before the jury, and we must presume that the jury gave it due consideration in arriving at the verdicts. Having returned verdicts in favor of the plaintiffs, they must have rejected the testimony of Young and accepted that of Ross, for the statements of these two witnesses are diametrically opposed to each other. They both cannot be true in view of the fact that there is no evidence whatever that the contracts were, or could have been, changed between the time Ross deposited them in the mail and the time when Young received them in sealed envelopes through the mail. The only basis on which the evidence of these two witnesses can be reconciled is to presume that someone, while these contracts were in the possession of the duly constituted mail authorities, surreptitiously and fraudulently made the purported changes in their phraseology. We are not permitted to indulge in such a presumption. On the other hand, the presumptions are "That official duty has been regularly performed" and "That the law has been obeyed." (Subds. 15 and 33, sec. 1963, Code Civ. Proc.) ▮ If, therefore, Young received those contracts with the guarantee clause written in each and on their receipt read them, as he testified that he did, he must have discovered that they were more than contracts of consignment and that they contained the covenant or agreement of guarantee. Having ascertained this fact, and afterward having accepted the fruit of the plaintiffs, and shipped and sold it under said contracts, the company, whom he represented, must be held to have ratified the contracts as drawn by Ross, and was thereafter estopped to deny their validity. This principle needs no citation of authority, but if any were needed we would refer to *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67, 71 [34 Pac. 527] and *Gladium Co., Inc.*, v. *Thatcher*, 95 Cal. App. 85, 91 [272 Pac. 340]. The jury having upon substantial evidence found in favor of the plaintiffs, this court is without power to set aside their verdicts.

Two separate appeals, due to the difference in the amounts of the verdicts, were taken in these actions, one in the action of H. Walker to this court and the other to the District Court of Appeal. Thereafter the appeal in the action of H. Walker was transferred to the District

Court of Appeal, where the two appeals were, upon stipulation, consolidated and submitted together. The same course was pursued here after the transfer of said actions to this court.

For the reasons hereinbefore stated, the judgment in each action is affirmed.

Preston, J., Waste, C. J., Richards, J., Seawell, J., and Shenk, J., concurred.

Rehearing denied.