[Civ. No. 8362. First Appellate District, Division One.—February 23, 1933.]

PACIFIC COMMERCIAL COMPANY (a Corporation), Appellant, v. JAMES A. GREER, Respondent.

Pillsbury, Madison & Sutro for Appellant.

Henry E. Monroe and Julia M. Easley for Respondent.

JAMISON, J., *pro tem.*—This action was for damages for the alleged breach of defendant's warranties in the sale to plaintiff of certain wire rope.

The amended complaint alleges that on June 14, 1918, defendant, by his letter of that date, offered to sell to plaintiff certain second-hand wire rope upon the terms and conditions and for the price set forth therein, and that on the 28th of June, 1918, plaintiff accepted the said offer; that thereafter defendant delivered said wire rope f. o. b. dock, San Francisco, for shipment to Manila, and in due course it was shipped to and received by plaintiff at its warehouse in Manila; that the said offer of defendant contained in his letter of June 14, 1918, stated that the wire rope so offered for sale to plaintiff was in serviceable condition and was in lengths of from 300 feet to 1500 feet; that the agreed price of said rope was paid by plaintiff to defendant; that said rope was wound upon reels and therefore plaintiff was unable to ascertain its condition when the same was delivered by defendant, but that said rope in the interior of said reels was in short lengths, badly worn, rusted and broken, and not more than 30 per cent efficient.

Defendant by his answer denied that the said rope did not comply with the orders of plaintiff for same, and denied that said rope was in short lengths of less than 500 feet, or that it was badly worn or at all worn, rusted or broken, or that it was not more than 30 per cent efficient, or that it was not 90 per cent efficient; and for an affirmative defense alleged that said rope was wound upon reels by order of the appellant under the inspection of Hunt & Company, the agent of plaintiff, and that plaintiff accepted the rope after such inspection, and by his amendment to the answer he denied that plaintiff had accepted the offer made by him as alleged in the complaint.

It appears from the evidence that plaintiff was engaged in business at Manila in the Philippine Islands, and that H. S. Masterton, of Alameda, California, was in the employ of plaintiff as the general manager of its export department, and was its buying agent; that defendant was engaged in the general brokerage business, and that he was not a dealer in wire rope except as a broker; that prior to June 14, 1918, he and Masterton entered into negotiations for the purchase, through defendant, of second-hand wire rope; that defendant had an offer from the Judson Iron Works of wire rope, and on June 14th wrote Masterton a letter (being the same letter to which reference is made in the complaint), specifying therein that the rope was serviceable and in lengths of from 300 to 1500 feet, shipments to commence within ten days from San Francisco; that plaintiff did not accept this offer; that later Masterton again opened negotiations with defendant for the purchase of second-hand rope and was informed by defendant that he would see if some could be procured; that he found he could procure rope from the Compson Bridge Company and so informed Masterton. Masterton also testified that the offer contained in defendant's letter of June 14, 1918, was not accepted by plaintiff.

Thereafter, on June 28, July 26 and October 15, 1918, plaintiff ordered from defendant used wire rope, specifying in said orders the lengths to be from 300 to 1500 feet, to be packed on reels, with Hunt's inspection. In the order of June 28, 1918, there was incorporated an order for two lengths of said rope to be 2,000 feet each. Defendant began filling these orders on August 1, 1918, the last delivery being made on January 9, 1919.

Masterton testified that he examined the rope purchased from defendant before it was reeled; that it seemed to be in perfect condition and that he was fully satisfied it met the requirements of the orders. William B. Gester, a witness for defendant, testified that he was a civil engineer in the employ of Hunt & Company and as such employee made the inspection of a large portion of said rope; that he saw the rope unwound from the old spools and rewound on new ones; that the rope was in good condition for second-hand rope; that while he could not state just how much of the rope he saw unwound and again rewound, he was engaged in seeing this done a number of days.

Each shipment of the rope was accompanied by a certificate of Hunt & Company, and each of said certificates contained the following statement: "The following coils of steel wire have been inspected and accepted according to cable contract and in our opinion based on our experience and judgment, are within the limits of the specifications furnished by client." A note followed in these words: "Careful superficial inspection of outside and end surfaces of these coils shows them to be of excellent quality and condition for second hand wire cable. All of the reels are new , . . and the cable is well coiled."

E. E. Diot, a witness for plaintiff, testified that he was the manager of the warehouse and traffic department of plaintiff and that on April 20, 1920, he examined the said rope and discovered that 75 per cent of it was of no value; that the entire lot was useless for ordinary purposes, and that anyone having regard for human life would not sell same for hoisting, haulage or transmission purposes, and yet on September 30, 1920, plaintiff wrote a letter to the Kailan Mining Administration, offering to sell it the said wire rope, in which was the following statement: "The rope has been used but has been very well preserved and is in excellent condition. An inspection made before the rope was shipped from the United States developed in the opinion of the inspector an efficiency of 80 per cent." This rope was delivered to plaintiff f. o. b. at San Francisco dock.

Plaintiff produced the depositions of several witnesses. It appears from the testimony of these witnesses that on November 12, 1920, plaintiff sold to the Kailan Mining Administration 3,736 lineal feet of 1 ⅛-inch wire rope purchased from defendant, and 3,000 lineal feet of 1-inch rope

so purchased; that it was rejected and returned to plaintiff for the reason that it was in short unspliced lengths, was unserviceable for hauling and could only be used as scrap; that in April, 1923, plaintiff sold said rope to H. C. Heald, a resident of Baguio, P. I., as junk. Shortly after its purchase Heald examined it and found it was of short lengths and badly worn, the lengths of the rope being as follows: 30 per cent under 100 feet; 50 per cent between 100 and 200 feet, and 20 per cent over 200 feet, the longest piece being 1250 feet in length.

The case was tried before the court and judgment was rendered for defendant, and from this judgment plaintiff appeals.

Appellant contends that respondent warranted that the rope was serviceable and that it was in lengths of not less than 300 feet, and that the undisputed evidence shows a breach of the warranty in that there is no evidence to support the findings of the court that the rope was not worn, rusted or broken; that the breaches of these warranties were not waived by any act of appellant in receiving the rope or otherwise.

The court found that when the wire rope was delivered by defendant it was wound upon reels and so wound by order of plaintiff; that before it was wound upon reels, it was open to plaintiff's inspection and was inspected by plaintiff; that it was wound upon reels under the inspection of Hunt & Company, the agent of plaintiff for such inspection, and was accepted by plaintiff on the inspection certificates issued by Hunt & Company, and furnished to plaintiff pursuant to its orders, and that said wire rope fully complied with said orders. The court further found that said wire rope in the interior of the said reels, or any of said rope, was not in pieces less than 300 feet in length, and that said pieces, or any of said wire rope was not badly, or at all worn, rusted or broken, and that it was 90 per cent efficient. These findings are supported by substantial evidence.

The undisputed testimony of both the respondent and Masterton, plaintiff's agent, was to the effect that the offer contained in respondent's letter of June 14, 1918, was never accepted by appellant. It is upon this letter that appellant bases its claim that respondent warranted the quality and

length of the wire rope. The amended complaint contains no allegation that respondent warranted the quality or length of said rope, or that appellant relied upon the warranty in its acceptance, and the court made no specific finding that there was no warranty by respondent. However, by the findings made by the court it impliedly found that there was no warranty.

Each of appellant's orders contained the requirement that the rope should be inspected by Hunt & Company. This inspection was made before the delivery of the rope. Therefore appellant did not rely upon respondent's judgment of the quality or length of said rope, but, on the contrary, upon the inspection made by Hunt & Company.

In *California Sugar etc. Agency* v. *Penoyar*, 167 Cal. 274, 279 [139 Pac. 671, 673], the court said: "Nothing is better settled than the rule that where the parties agree that the performance or non-performance of the terms of a contract, or the quantity, price or quality of goods sold, is to be left to the determination of a third person, his judgment or estimate is binding, in the absence of fraud or mistake." (Citing authorities.)

There is no evidence in the case at bar that there was either fraud or mistake upon the part of Hunt & Company.

Where parties to a contract agree that the quality of the thing sold shall be determined by a particular person, such determination is conclusive on the parties and cannot be impeached except for fraud, collusion or palpably arbitrary action. (*Dickson* v. *Darnell*, 98 Wash. 301 [167 Pac. 937].) So it may be agreed that the approval of a third person shall be deemed sufficient, and when this is pronounced in good faith the vendee will be bound by the decision given. (*Herdic* v. *Bilger*, 47 Pa. 60; *Herman H. Hettler Lumber Co.* v. *Olds*, 221 Fed. 612; *Hurley-Mason Co.* v. *Stebbins, Walker & Spinning*, 79 Wash. 366 [140 Pac. 381, Ann. Cas. 1916A, 948, L. R. A. 1915B, 1131]; *Sherman* v. *Sheffield Cast Iron & Foundry Co.*, 50 Okl. 109 [150 Pac. 1062].)

The first delivery of the said wire rope to appellant was made on August 1, 1918, and the last delivery was on January 9, 1919. More than a year elapsed before appellant made any inspection of any of said rope. On April 20, 1920, Diot, an employee of appellant, namely, its warehouse

manager, inspected the rope, and claims to have discovered it to be in short lengths and unserviceable. ■ Appellant attempts to excuse the delay in making inspection of the rope on the ground that it was wound on reels. ■ The general rule is that in order to excuse the lack of inspection upon the part of the buyer, it must be wholly impracticable. (55 Cor. Jur. 720.) The buyer cannot relieve himself on the ground that the examination will occupy time or that it may be attended with inconvenience and labor. (*Bailey Trading Co.* v. *Levy*, 72 Cal. App. 339 [237 Pac. 408], and authorities cited; *Jackson* v. *Porter Land & Water Co.*, 151 Cal. 32 [90 Pac. 122]; *Byrne* v. *Jansen*, 50 Cal. 624; *Gladium Co., Inc.,* v. *Thatcher*, 95 Cal. App. 85 [272 Pac. 340, 343].) In this last case the court quoted with approval 23 Ruling Case Law, p. 1434, section 257, where it is said: " 'Without doubt the buyer's retention of the goods beyond a reasonable time for examination and communication with the seller, standing alone, will be regarded as warranting the conclusion that he has accepted the goods and thus become liable, especially if the delay has worked prejudice to the seller. . . . Receipt (of the goods) will become acceptance if the right of rejection is not exercised within a reasonable time, or if anything has been done by the buyer which he would have no right to do unless he were the owner of the goods.' (23 R. C. L. 1436, sec. 259.) "

Furthermore, some seven months after appellant's warehouseman claimed to have discovered that the rope was defective, appellant sold a portion of said rope to the Kailan Mining Administration, representing that the rope was in excellent condition.

Failure to notify the seller of the rejection of the article within two months after knowledge of the defect has been held to be an unreasonable delay. (*Jackson* v. *Porter Land & Water Co., supra.*) ■ In the instant case apparently no notice of the rejection of the rope was given to respondent until after the rejection of the portion purchased by the Kailan Mining Administration in November, 1920. This was an unreasonable delay.

We are of the opinion that there was sufficient evidence to support the findings, and therefore the judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.