Filed 4/28/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CORAL FARMS, L.P., et al., | |
| Plaintiffs and Appellants, | G058909 |
| v. | (Super. Ct. No. 30-2017-00931266) |
| THOMAS MAHONY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Glen R. Salter, Judge. Affirmed.

One, Christopher W. Arledge, Lawrence J. Hilton and Robert D. Hunt for Plaintiffs and Appellants.

Tressler and Mohammed S. Mandegary for Defendants and Respondents.

\*　　　\*　　　\*

It is a well-settled rule that when the parties to a contract agree that the sufficiency of a party's performance is to be decided by a third person (such as an engineer), that third person's decision is conclusive and binding on the parties in the absence of bad faith, fraud, or gross negligence. (See, e.g., *Brown v. Aguilar* (1927) 202 Cal. 143, 151.) This appeal involves two lawsuits, three parties, and one contract.

In the first lawsuit, three neighboring property owners incurred varying damages due to a mudslide. The three parties sued and countersued each other for negligence and other claims related to water drainage. The parties eventually settled. The owners agreed to perform mitigation and repair work on their own properties according to their own separate plans. The agreement was memorialized in a contract (the Settlement Agreement). The "Final Approval" provision stated: "Upon completion of the work, each party shall obtain a written report by the design engineer or geologist that the work performed is in substantial compliance with that Parties' plan . . . and will provide a copy to all other Parties within 30 days of completion."

In the second lawsuit, two owners sued the third owner (a married couple). Plaintiffs alleged defendants breached the Settlement Agreement because their work was not in substantial compliance with their plan. But in a bench trial, the court found defendants complied with the contract by providing a copy of an engineer's report stating their work was "'substantially completed in accordance with the approved plans.'" The court also found no evidence of bad faith, fraud, or gross negligence.

On appeal, plaintiffs ostensibly contend the trial court misinterpreted the Settlement Agreement. But what plaintiffs appear to truly regret is the "Final Approval" provision, which allowed each party's engineer to decide whether that party had substantially complied with its own plan. Courts are not in the business of rewriting ill-advised contract provisions. Plaintiffs are stuck with the contract they signed.

We agree with the trial court's interpretation of the Settlement Agreement and we find no merit to any claimed evidentiary errors. Thus, we affirm the judgment.

2

# I

## FACTS AND PROCEDURAL BACKGROUND

In December 2010, a mudslide occurred that affected three large hillside properties located in San Juan Capistrano. The three neighboring properties are owned by: 1) Coral Farms, L.P. (the Coral Farms Property), 2) Paul and Susan Mikos (the Mikos Property), and 3) Thomas and Sonya Mahony (the Mahony Property).

There is a natural drainage channel coursing through the three properties. The Coral Farms Property is upslope and undeveloped. The Mikos Property is upslope and residential. The Mahony Property is downslope and residential.

*The First Lawsuit*

In April 2011, the Mahonys filed a complaint against Coral Farms for nuisance, negligence, and related claims. The Mahonys alleged Coral Farms had "'improperly altered the natural gradients and water flow patterns of their property.'" As a result of this, the Mahonys alleged they incurred damages during the earlier mudslide. They sought "an injunction preventing Coral Farms from making future alterations to 'the gradients and water flow patterns'" of their property.

In June 2011, Coral Farms filed a cross-complaint for nuisance and trespass. Coral Farms alleged the Mahonys had constructed their property in a manner insufficient to accommodate the natural water channel. Coral Farms further alleged the Mahonys had redirected water and mud onto their property.

In July 2012, the Mahonys filed a first amended complaint adding the Mikoses as defendants. The Mahonys alleged the Mikoses had also contributed to the Mahonys' property damage by installing an outlet pipe that sent additional water flow into the natural drainage channel.

In August 2012, the Mikoses filed a cross-complaint against both Coral Farms and the Mahonys for negligence, nuisance, and related tort claims.

3

*The Settlement Agreement*

In October 2013, the three parties signed—and the superior court approved—the Settlement Agreement. Some of its provisions state:

"It is the intent of the parties to each undertake reasonable protective measures to mitigate the existing conditions on their respective properties for the purposes of reducing the risk of damage from erosion, mudflows and debris flows."

"Mahony agrees to implement and complete the mitigation/repair plan for their property attached hereto as Exhibit A [hereinafter, the Norris Plan]."

"Coral Farms LP agrees to implement and complete the repair plan for their property set forth attached hereto as Exhibit B entitled 'Soil Stabilization Watercourse Area, Design Build Plan' [hereinafter, the 'Design Build Plan']."

"Mikos agrees to implement and complete the mitigation plan for their property set forth attached hereto as Exhibit C [hereinafter, the Stoney-Miller Plan]."

"Each Party shall have sole discretion on the selection and payment of engineers and contractors to perform the work on their respective property and shall have the sole responsibility to pay his/her/its engineers, contractors and workers. The respective plans identified herein are separate and independent . . . . Each Party assumes sole responsibility for and is solely liable for the adequacy of the design and work performed on their respective property . . . ."

"In the event a Party is required to prepare an Alternate Plan due to impossibility or impracticability, notice and a written copy the Alternative Plan shall be provided to the other Parties . . . ."

"**City Permits and Final Approval:** The work shown in the plans will be performed pursuant to and in compliance with all requirements by the City of San Juan Capistrano . . . . Each Party covenants and agrees to use his/her/its best efforts to secure all required permits and comply with applicable building codes . . . . Upon completion of the work, each party shall obtain a written report by the design engineer or geologist that

4

the work performed is in substantial compliance with that Parties' plan as set forth in Exhibits A, B and C, respectively, and will provide a copy to all other Parties within 30 days of completion."

"**Fully Integrated Agreement**: This Agreement is intended as a final and fully integrated agreement and the terms and conditions stated herein are contractual and not merely a recital. The terms and provisions of this Agreement may be modified or changed only by the mutual written consent of each Party."

*Completion of the Work*

In January 2014, Coral Farms obtained an engineer's report from Associated Soils Engineering, Inc., stating its repair work was "'found to be in substantial compliance' with the plan."

In October 2014, the Mikoses obtained an engineer's report from Knudson Engineers & Construction, Inc. stating: "'The subject project was plan checked, permitted, inspected, and approved by the City of San Juan Capistrano. This project, under my direction, was designed, installed, inspected during construction, and approved . . . as constructed at a Final Site Inspection.'"

In December 2014, the Mahonys obtained an engineer's report from Engineering Design Group stating its mitigation/repair "work 'has been substantially completed in accordance with the approved plan.'"

*The Second* (*Instant*) *Lawsuit*

In October 2017, Coral Farms and the Mikoses (collectively Coral Farms) filed a complaint against the Mahonys for breach of the Settlement Agreement and false promise. Coral Farms alleged the work performed by the Mahonys "is dramatically and substantively different than what was required of them under the Settlement Agreement." Coral Farms further alleged when "the Mahonys entered into the Settlement Agreement,

they had no intention of ever performing their obligations under that agreement." Coral Farms asked for specific performance of the Settlement Agreement, and "damages in an amount to be proved at trial but in excess of $500,000."

In June 2019, the trial court presided over a seven-day bench trial and later filed a statement of decision. Coral Farms objected to the court's statement of decision on several grounds. The court found "the myriad of issues raised by [Coral Farms] are irrelevant and immaterial to the legal basis for the decision" and entered a judgment in favor of the Mahonys. Coral Farms appeals from the trial court's judgment.

II

DISCUSSION

Coral Farms contends the trial court: A) misinterpreted the Settlement Agreement; and B) made several evidentiary errors. We shall review both contentions.

A. *The Settlement Agreement*

Generally, the interpretation of a settlement agreement is governed by the same rules that apply to other contracts. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165-1166.) "When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract. [Citations.] When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955-956.)

Here, as the parties appear to agree, the trial court's interpretation of the Settlement Agreement (particularly the Final Approval clause) was not based on relevant conflicting extrinsic evidence. We will therefore apply a de novo standard of review.

6

Further, although Coral Farms' objections to the trial court's statement of decision were largely based on factual grounds, and not on the basis the court legally misinterpreted the Settlement Agreement, Coral Farms has not forfeited its claims of legal errors on appeal. (See *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 59 ["a party does not waive objections to legal errors appearing on the face of the statement of decision by failing to respond to it"].)

In this part of the discussion, we will: 1) review general principles of contract law; 2) consider the relevant proceedings; and 3) analyze the principles of contract law as applied to the interpretation of the Settlement Agreement in this case.

### 1. General Principles of Contract Law

"Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822.) In interpreting a contract, we give the words their ordinary and popular meaning, unless the parties or usage have given the words a specialized or technical meaning. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752.)

A contract is read as a whole, "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) Contracts "are construed to avoid rendering terms surplusage." (*ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1785-1786.) "The elements of . . . breach of contract include the existence of a contract, plaintiff's performance or excuse for nonperformance, defendants' breach, and resulting damages . . . ." (*J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 9.)

It is well settled that: "If the parties agree that the sufficiency of performance is to be determined by some third person, e.g., an architect, that person's

7

determination is conclusive in the absence of proof of fraud or mistake." (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 805, p. 859; see 7 A.L.R.3d 555 ["the rationale for holding a third-party determination conclusive upon the parties is the fact that the very purpose of agreeing on an inspector is to rely upon his judgment, and forestall disputes"]; see, e.g., *Dingley v. Greene* (1880) 54 Cal. 333, 336-337 [where contract provided payments should be made on the certificate of the architect, his certificate was conclusive, unless it could be shown that it was obtained by the owner by collusion or fraud]; see also *City Street Improv. Co. v. Marysville* (1909) 155 Cal. 419, 427 ["The stipulation in such contracts that the engineers' estimate should be final has been held valid and binding by the courts of England, by those of the various states of the Union and by the federal tribunals"].)

"Nothing is better settled than the rule that where the parties agree that the performance or nonperformance of the terms of a contract, or the quantity, price, or quality of goods sold, is to be left to the determination of a third person, his judgment or estimate is binding, in the absence of fraud or mistake. [Citations.] The 'mistake' which will justify an impeachment of the arbiter's decision is not mere error of judgment, but is the kind of mistake which 'amounts to fraud . . . .'" (*California Sugar & White Pine Agency v. Penoyar* (1914) 167 Cal. 274, 279-280; *American Trust Co. v. Coryell* (1935) 3 Cal.2d 151, 154 [absent showing of fraud, stipulation in contract that engineer's certificate should be binding on all parties was complete defense to owner's claim that paving contractor's work was not completed in a satisfactory manner].)[1]

---

[1] When we say "well settled" we really mean it. In our research, we were unable to find more recently published opinions stating the principle of contract law as held in *American Trust Co. v. Coryell*, *supra*, 3 Cal.2d. 151, and the other related decisions. Nonetheless, all the cases cited in this opinion are still "good law." Therefore, we are certifying this opinion for publication because it "reaffirms a principle of law not applied in a recently reported decision." (Cal. Rules of Court, rule 8.1105(c)(8).)

### 2. *Relevant Proceedings*

During the bench trial, Coral Farms presented testimony that "the as-built condition of the repair that's been performed on the Mahony Property differs in substantive, significant ways from the repair attached to and included in Exhibit A [the 'Norris Plan'] in the settlement agreement." Generally, Coral Farms' position was "the as-built condition of the repair on the Mahony Property has some intrinsic vulnerabilities that make the repair highly probable to perform very poorly and fail in various aspects."

Steve Norris testified on behalf of the Mahonys about the repairs to the drainage system on their property. Norris testified, "I am a licensed civil engineer, geotechnical engineer, professional geologist, certified engineering geologist and hydrologist." Norris agreed there had been some changes to the repair plan he had designed, primarily in order to obtain permits from the City of San Juan Capistrano. However, Norris also testified the completed repairs were "in substantial compliance" with the Norris Plan, attached as Exhibit A to the Settlement Agreement.

### 3. *Analysis and Application*

When a contract designates a third person to certify performance under a contract, that third person's decision is generally conclusive, and the parties may not look behind the decision, even if the third person was appointed by one of the parties. (*Moore v. Kerr* (1884) 65 Cal. 519, 521 (*Moore*).) In *Moore*, a county hired a company to build a bridge. The company was to be paid a portion in advance, and the balance "upon the completion and delivery of said bridge." (*Id*. at p. 520.) The contract stated the work "was to be done, under the direction and to the satisfaction of the superintendent . . . , appointed by the board of supervisors . . . , in a good and workmanlike manner." (*Id*. at p. 521.) After completing the bridge, the company sued the county for the outstanding balance. The trial court found the county's appointed superintendent had been satisfied with the bridge and ruled in favor of the company. (*Ibid*.)

9

In its 1884 decision, the California Supreme Court agreed with the trial court. (*Moore, supra,* 65 Cal. at p. 521.)[2] The Supreme Court held that in the absence of collusion or fraud, the company was entitled as a matter of law to the unpaid balance: "The work was done to [the superintendent's] satisfaction, and it was so found. [¶] It does not appear that there was any fraud or mistake on the part of [the superintendent]. His judgment is therefore conclusive, and the [county is] not allowed to go behind it." (*Ibid*; accord *Pacific Commercial Co. v. Greer* (1933) 129 Cal.App. 751, 756, italics added ["Where parties to a contract agree that the quality of the thing sold shall be determined by a particular person, such determination is conclusive on the parties and *cannot be impeached* except for fraud, collusion or palpably arbitrary action"].)

Again, the "Final Approval" section of the instant Settlement Agreement provided: "Upon completion of the work, each party shall obtain a written report by the design engineer or geologist that the work performed is in substantial compliance with that Parties' plan as set forth in Exhibits A, B and C, respectively, and will provide a copy to all other Parties within 30 days of completion."

In its statement of decision, the trial court found "there was no breach of the Settlement Agreement. As drafted, the Agreement does not allow a party to go behind the engineer's certificate. It only required each party to deliver its engineer's certificate to the other parties, which the Mahonys did. [¶] Even if it could be inferred that the Settlement Agreement allowed a party to look behind the face of the engineer's certificate, the Court finds Steve Norris did not engage in bad faith, fraud, or gross

---

[2] The Legislature did not display the good wisdom to create intermediate appellate courts until almost 20 years later. In 1903, the Legislature established the First, Second, and Third District Courts of Appeal (San Francisco, Los Angeles, and Sacramento). Our Fourth District Court of Appeal was not established until 1929, and is now divided into Divisions One, Two, and Three (San Diego, Riverside, and Santa Ana). (<https://www.courts.ca.gov/2958.htm> [as of March 25, 2021], archived at: <https://perma.cc/VAN8-UV4G>.)

negligence in signing the engineer's certificate . . . . [¶] The Court further finds that the Mahonys did not make the false promise alleged by Coral Farms when signing the Settlement Agreement."

The trial court's interpretation of the Settlement Agreement is consistent with well-settled law. (See, e.g., *Moore*, *supra*, 65 Cal. at p. 521.) Absent a finding of bad faith, fraud, or gross negligence, Coral Farms could not "go behind" the engineer's report signed by Norris. (*Ibid*.) Further, the court's interpretation is also consistent with the intent of the parties as expressed through the plain language of their contract, particularly the "Final Approval" provision. That is, Coral Farms expressly agreed to accept Norris' written report that the Mahonys had performed the required repairs in substantial compliance with the agreed upon plan. A contrary interpretation would render the "Final Approval" provision meaningless. (See *ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.*, *supra*, 17 Cal.App.4th at p. 1785 [contracts "are construed to avoid rendering terms surplusage"].)

Thus, we agree with the trial court's interpretation of the Settlement Agreement and affirm the judgment.

Coral Farms argues: "The trial court's interpretation leads to absurd results." (Boldfacing and capitalization omitted.) Coral Farms poses a rhetorical question: "Are we really to believe that the parties, who did not trust each other, who spent substantial time coming up with specific repairs that the others were required to perform . . . , could simply do something different and have their own engineer say he believed the new plan was in substantial compliance?"

Respectfully, if Coral Farms intended a different result, then perhaps it should have negotiated and/or drafted a different contract. When there is a valid written contract, courts generally enforce its terms, regardless of their advisability. (See *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 164.) "'The courts cannot make better agreements for parties than they themselves have

11

been satisfied to enter into or rewrite contracts because they operate harshly or inequitably. It is not enough to say that . . . the contract would be improvident or unwise or would operate unjustly. Parties have the right to make such agreements.'" (*Ibid*.)

Coral Farms also argues the Settlement Agreement "does not state that the report of each party's design engineer is 'valid,' or that it is 'conclusive,' or that it is 'binding.'" That is true enough, but it is of no consequence. The incorporation of current law into a contract is presumed and does not require a deliberate expression by the parties. (See *Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 93-94 [unless a contrary intention is evident, the parties to a contract are deemed to have entered into the agreement with reference to existing principles of law].)

Here, we must presume Coral Farms (and the other parties) were aware of the conclusive consequences of the "Final Approval" provision in their fully integrated contract; there is no evidence to the contrary. In any event, even though the precise words may not be explicitly stated in the Settlement Agreement, the valid, conclusive, and binding nature of the "Final Approval" provision is apparent from the contract's plain language. (See *Brown v. Aguilar*, *supra*, 202 Cal. at p. 151 ["although the contract does not state in so many words that the certificates of the architect are to be final and conclusive, yet such is clearly the import of the above-quoted provisions"].)[3]

Coral Farms further argues *Hagginwood Sanitary Dist. v. Downer Corp.* (1960) 179 Cal.App.2d 756 (*Hagginwood*), compels a different result. We disagree. In *Hagginwood*, a local government agency hired a contractor to build a sewer line. (*Id*. at

---

[3] During oral argument, appellants spent a lot of time arguing the Settlement Agreement obligated each party to obtain a "written report" and did not specifically contain the words "certificate" or "certify." But there are no "magic words" required in a contract to interpret its plain meaning. In fact, each party complied with the contract by obtaining a written report characterized by the trial court as a certificate. As the court stated: "Each certificate was written and phrased differently, but they all effectively certified that the work done was in substantial compliance with the individual plans for each property."

p. 757.)  The contract provided:  "'On all questions concerning the acceptability of . . . the work, the decision of the Engineer . . . shall be final.'"  (*Id*. at p. 758.)  After experiencing some (undoubtedly unpleasant) "leakage" with their newly constructed sewer line, the government agency sued the contractor alleging it "had failed to conform to the plans and specifications" in the contract.  (*Id*. at pp. 757, 759.)  The trial court found no evidence of fraud and held that the decision of the engineer "was final."  (*Id*. at pp. 758-759.)  The appellate court agreed:  "It is the rule in this state that the decision of an engineer or superintendent approving or disapproving the work as performed under a contract is, in the absence of fraud, bad faith or mistake conclusive and binding on the parties where the contract either expressly provides that it shall be final and conclusive *or in plain language shows that it was the intention of the parties that the person to whom the question is submitted shall be the final arbiter of it*."  (*Id*. at p. 760, italics added.)

Here, the Settlement Agreement did not explicitly state each engineer's approval "shall be final" as in *Hagginwood*, *supra*, 179 Cal.App.2d 756.  But the relevant provision in the contract is, in fact, titled "Final Approval."  Further, in other parts of the contract, it was explicitly agreed each party was to select and pay their own engineers, and each party "assumes sole responsibility for and is solely liable for the adequacy of the design and work performed on their respective property."  (See Civ. Code, § 1641 [contract is to be read as a whole].)  Therefore, we find that the "plain language" of the Settlement Agreement shows "that it was the intention of the parties that" each party's respective engineer or geologist "shall be the final arbiter of" whether that party's remediation or repair work was in substantial compliance with its attached plan.  (See *Hagginwood,* at p. 760.)

Coral Farms also argues the "Final Approval" provision of the Settlement Agreement was intended to act as a "*notice of completion* (*not a certificate* of compliance or even substantial compliance) through their respective design engineers."  But Coral Farms' argument is belied by the contract's plain language:  "Upon completion of the

13

work, each party shall obtain a written report by the design engineer or geologist that the work performed is in *substantial compliance* with that Parties' plan . . . ." (Italics added.) Moreover, Coral Farms' subjective intent is irrelevant to our analysis. (See *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, *supra*, 109 Cal.App.4th at p. 956 ["California recognizes the objective theory of contracts . . . under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation'"].)

Finally, Coral Farms argues the Mahonys made changes to the Norris Plan "without ever claiming or proving impossibility or impracticability, which are the only means . . . to avoid building what was required." But as the trial court stated in its cogent analysis, the Settlement Agreement "does not define 'impossibility,' and it defines 'impracticability' as changes to the conditions of the land due to *force majeure*, such as earthquake, fire, and land failure." The court found Coral Farms' argument unpersuasive "because there were no *force majeure* issues here." We agree.

In sum, we find the trial court interpreted the parties' contract consistent with the law and according to its plain meaning. Thus, we affirm the judgment.


B. *Evidentiary Errors*

Claims of evidentiary error are reviewed for an abuse of discretion. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) A judgment cannot be reversed "unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice." (Evid. Code, § 354.) An evidentiary "'error is not reversible unless "'it is reasonably probable a result more favorable to the appellant would have been reached absent the error.'"'" (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1538.)

Here, Coral Farms argues the trial court erroneously failed to exclude some opposing testimony or failed to admit some of its exhibits. The evidence at issue

purportedly tends to impeach or support Norris' conclusion that the Mahonys' repair work was in substantial compliance with its plan. But Coral Farms cannot "look behind" Norris' conclusion. (See *Pacific Commercial Co. v. Greer*, *supra*, 129 Cal.App. at p. 756, italics added [a determination by a chosen third party "is conclusive on the parties and *cannot be impeached* except for fraud, collusion, or palpably arbitrary action"].)

In short, the evidence at issue was essentially irrelevant. Thus, the trial court's alleged evidentiary errors are not arguably prejudicial.


III

DISPOSITION

The trial court's judgment is affirmed. The plaintiffs (Coral Farms and the Mikoses) are ordered to pay the defendants' (the Mahonys') costs on appeal.



MOORE, J.

WE CONCUR:


O' LEARY, P. J.


FYBEL, J.