(46 Misc. Rep. 63)

## BOESSNECK et al. v. WILLIAM TAYLOR & SON CO.

(Supreme Court, Appellate Term. December 23, 1904.)

1. SALE BY SAMPLE—INSPECTION.

Defendant purchased certain goods by sample in June, 1901, which were delivered in November of the same year, and defects in the goods were not discovered by defendant until April, 1902, after which the goods were paid for on May 5th of that year; and defendant, having disposed of a portion of the goods, when sued for a debt subsequently contracted, counterclaimed damages alleged to have been sustained by reason of such defects. *Held* that defendant, having failed to inspect the goods within a reasonable time, waived the implied warranty that the goods were equal to the sample.

Appeal from City Court of New York, Trial Term.

Action by Hugo E. Boessneck and others against the William Taylor & Son Company. From a City Court judgment in favor of plaintiffs, defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

Goodwin, Thompson & Vanderpoel, for appellant.
Epstein Bros., for respondents.

GILDERSLEEVE, J. The action is for goods sold and delivered between March 16, 1902, and May 9, 1902. The sale, delivery, and nonpayment are conceded. The defense is based upon a counterclaim arising out of a transaction had about a year previous, and presents the only issue tried.

In June, 1901, plaintiffs sold and delivered to defendant, a corporation, by sample, certain summer goods, known as "mercerized grenadines," a portion of which defendant, in turn, sold by sample to other dealers. The goods themselves were delivered in November, 1901, and were paid for on May 5, 1902. No express warranty is pleaded. No fraud is alleged, nor is it charged that the goods contained any latent defects. The goods were forwarded by defendant to its customers without any inspection by the defendant, until some of the goods were returned by the customers, as not up to sample, in April, 1902, when defendant examined the goods for the first time, and found them defective. Nevertheless the defendant paid for the same on May 5, 1902, because the parties were constantly dealing together; and, as claimed by defendant, defective goods could be returned, and a claim therefor be made against another and subsequent invoice. On May 14, 1902, defendant returned to plaintiffs the goods that had not already been sold to its customers and accepted by them, but plaintiffs refused to accept such returned goods. Defendant thereupon offset these returned goods against what it owed for goods subsequently sold and delivered by plaintiffs to defendant, for which the plaintiffs sue to recover in this action. At the close of the trial the plaintiffs moved for the direction of a verdict on the ground that it appeared from defendant's own testimony that it had kept the goods six or seven months before returning or attempting to return any portion thereof, although defendant's witnesses admitted the inspection could have been

made in three days, and that therefore defendant had not acted within a reasonable time. The defendant moved to have the question of reasonable time submitted to the jury, with all the other issues raised. The court granted plaintiffs' motion, and directed a verdict for the amount claimed. Defendant appeals.

. We assume, for the purposes of this opinion, that the goods were sold by sample. The defendant's representative testified as follows as to the cause for the delay in examining and returning the goods, viz.:

"Q. State to the court and jury why it was that these goods had not been examined by you until they commenced to be returned by the parties to whom they were sold by sample? A. Because the nature of the goods is such that they are used only during the hot weather—all summer; and, while we sell them at the same time that we do the heavier goods, we don't put them in stock and open up the pieces. We sell them before the first of the year, taking orders on them on samples, and open the cases, and fill these orders by number; the goods being paid for. The reason we don't open them up is that we have so many cases of similar goods that it would be impossible for us to open the pieces when we are originally filling the orders, say in December or the first of January. Later on, when these goods begin to return, we put them in our stock for the people who come to buy them from hand to mouth; buy them when they are going to sell them again, and write us—the people who do not place advance orders; and then we have to open the pieces and ship people the goods in the piece, and not by the sample, and then is the first time we really see what these goods look like. We receive so many thousand cases of goods in November, December, and January that for us to examine those goods would make it impossible for us to do a jobbing business on the margin of business it is necessary to do it on. When we place advance orders and sell by sample, we only do it with reputable houses we can trust, so, if anything appears wrong later, there will be no question about those goods."

The general rule is that, upon the sale and delivery of goods, it is the duty of the purchaser to examine them upon their arrival, or within a "reasonable time" thereafter, and, if they are found not to comply with the sample as to kind and quality, to rescind the contract promptly and return the goods. But what is "reasonable time" is a question of fact to be determined upon the circumstances of the case, including the situation and liability to injury of the vendor by delay in returning the goods, the convenience and necessity of the vendee, and customs of the trade, and, in general, the surrounding facts and circumstances of the case. Let it be borne in mind that the goods in question were sold to the defendant in June, 1901, billed in October, and delivered in November of the same year; that the alleged defects first became known to the defendant in April, 1902; that they were paid for by the defendant on May 5, 1902; that the defendant disposed of a portion of the goods, and, when sued for a debt subsequently contracted, counterclaimed damages alleged to have been sustained by reason of the defects in said goods. Under the circumstances, it was the duty of the defendant to inspect the goods within a reasonable time after delivery, if it wished to avail itself of any defects in quality. No question was presented as to what was a reasonable time in which to inspect the goods after delivery. This question was eliminated by defendant's own proof. It was established by the testimony of the defendant's witnesses that it had ample opportunity—even months—in which to inspect and examine the goods, and that all defects would have been dis-

covered within two days. The failure to inspect is not excused by the proof that inspection was inconvenient. There is no claim of warranty that survived acceptance. The defendant retained and paid for the goods after full opportunity to ascertain their quality and character, and is barred from all claim for compensation for any defects contained in the goods. There was acceptance and waiver of any implied warranty. De Bavier v. Funke (Sup.) 21 N. Y. Supp. 410; Dounce v. Dow, 64 N. Y. 411; Hooper v. Story, 79 Hun, 53, 29 N. Y. Supp. 639; Id., 155 N. Y. 171, 49 N. E. 773; Gurney v. Atlantic R. Co., 58 N. Y. 358.

The pleadings and testimony presented no question for consideration by the jury, and the learned trial judge properly directed a verdict in favor of the plaintiffs.

Judgment affirmed, with costs to the respondents.

MacLEAN, J., concurs. FREEDMAN, P. J., taking no part.