## J. Parry Lukens *v.* R. J. Crozier, Individually, and Trading as R. J. Crozier Company, Appellant.

*Sales—Vendor—Vendee—Agency—Liability of vendee.*

In an action of assumpsit for the price of goods sold and delivered, a buyer who is acting in his own behalf, or for an alleged principal, whom he did not have authority to represent, is liable to pay for the goods which he ordered.

In such case, where the defendant has failed to comply with the provisions of the Sales Act in regard to the rescinding of the contract of sale, or notifying the vendor of his refusal to accept the goods, he is bound by the terms of the contract.

Argued December 11, 1924. Appeal, No. 231, Oct. T., 1924, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1922, No. 1370, on verdict for plaintiff in the case of J. Parry Lukens v. R. J. Crozier, individually, and trading as R. J. Crozier Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit for goods sold and delivered.    Before AU-
DENRIED, J.

The facts are stated in the opinion of the Superior
Court.

Verdict for plaintiff in the sum of $2,011.15, and judg-
ment thereon.    Defendant appealed.

*Errors assigned* were, among others, refusal of defend-
ant's motion for judgment non obstante veredicto.

*Martin V. Bergen,* for appellant.

*Winfield W. Crawford,* and with him *Henry S. Borne-
man,* for appellee.

PER CURIAM, February 27, 1925:

The following extracts from the opinion filed by Pres-
ident Judge AUDENRIED, of the court below, upon over-
ruling defendant's motion for judgment non obstante
veredicto, properly dispose of all the questions involved
in this appeal.

"The first question to be decided is whether the de-
fendant is under any liability whatever to the plaintiff
in this matter.    There can be no doubt that Crozier sent
to Lukens the order on the strength of which the latter
shipped the pipe in question.    In sending this order he
must have acted either on his own behalf, or as agent
for Lukens, or as agent for the Wayne Steel & Iron Co.
If he acted as agent for Lukens in reporting the order
that he had received on the latter's account, the defend-
ant would, of course, be under no liability to pay for the
pipe.    This theory of Crozier's status in the matter, how-
ever, must be eliminated from the case.    In his cross-
examination, he was asked by the trial judge, 'Did you
represent Lukens?'    And to this question he replied, 'We
did not represent Lukens; no.'    If in this matter Cro-
zier acted on behalf of the Wayne Steel & Iron Co., he
would not be responsible for the price of the pipe,

provided that he had authority to act for that corporation. If, however, the defendant acted without authority to bind his alleged principal, he rendered himself personally liable for the price of the pipe that he ordered: Wolff v. Wilson, 28 Pa. Superior Ct. 511; Stiteler v. Ditzenberger, 45 Pa. Superior Ct. 266; Hopkins v. Everly, 150 Pa. 117. While it is true that Crozier claimed at the trial that in the matter now under consideration he represented the Wayne Steel & Iron Co., his letter to that company, dated October 21st, makes it certain that this claim is absolutely without foundation. In this communication he writes to his correspondent, 'This material will be invoiced to you direct by J. Parry Lukens, Liberty Building, Philadelphia, and would advise that it is satisfactory to pay their invoice as rendered by them, as we are representing them in this transaction.' We conclude that Crozier in dealing with Lukens acted either as purchaser on his own behalf, or attempted to make a purchase on behalf of a party whom he did not represent. In either case he became bound to accept and pay for the goods that he ordered."

"The second question in the case arises from the fact that the plaintiff's claim is for the price at which he sold the pipe shipped by him on the defendant's order. The defendant contends that an action for the price of the pipe cannot be maintained since, until sold for freight and demurrage, the title never passed from the seller, and that, under no view of the case, is the buyer liable to answer for anything but damages for failure to accept and pay for the pipe. This objection to the claim is not hinted at in the affidavit of defense, and by sec. 16 of the Practice Act of 1915, P. L. 483, it is provided that 'Neither party shall be permitted at the trial to make any defense which is not set forth in the affidavit of defense, or plaintiff's reply, as the case may be,' except in certain classes of cases which do not include that at bar. Apart, however, from any question of practice, the defense suggested under this head is unsound. Where, under a con-

tract to sell, or a sale, the property in the goods has passed to the buyer and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods: Sales' Act, May 19, 1915, P. L. 543, sec. 63.....Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained: Sales Act, sec. 17. If, under such a contract, the seller delivers the goods to the carrier or other bailee for the purpose of transmission to the buyer, he is presumed to have unconditionally appropriated the goods to the contract; but, if the contract requires the seller to deliver the goods at a particular place, the property does not pass until the goods had reached the place agreed upon: Sales Act, sec. 17 and sec. 19, Rules 2 and 5. Did the seller in the case at bar deliver the goods that he contracted to sell? This question must be answered in the affirmative, Lukens placed the pipe in the hands of a carrier for transmission to the place and person designated by Crozier. The shipment reached its destination in due course, and the buyer as well as the party to whom he had directed it to be sent were notified of its arrival there. The plaintiff duly performed all that his contract called for."

"Did the buyer accept the pipe shipped by the plaintiff? This question also must be answered in the affirmative. 'The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them': Sales Act, sec. 48. A buyer who has not previously examined the goods is, of course, not to be presumed to have accepted them unless and until he has had a reasonable opportunity of ascertaining whether they are in conformity with the contract: Sales Act,

sec. 47. The pipe shipped from Akron, Ohio, by the plaintiff, reached Croghan, New York, prior to November 28, 1921. It lay on the cars at the latter point for at least six weeks before the carrier sold it. Of the arrival of the cars at Croghan the defendant was informed before that time began to run. It cannot successfully be maintained that Crozier was not given a reasonable opportunity of examining the pipe. No word reached the plaintiff from any source to indicate that acceptance of the pipe was refused. The fact that Crozier's letter to Lukens, which bears date November 28, 1921, indicates very clearly that he and the Wayne Steel & Iron Co. did not reject or refuse to accept it, but that the pipe was held on the cars at Croghan under circumstances such as to make its retention inconsistent with the continuance of the plaintiff's ownership thereof."

"If the property in the pipe passed to Crozier, the expenses incurred through the delay in unloading the cars was properly payable by him, despite the liability of Lukens for them to the carrier by reason of the fact that he was consignor. The plaintiff is clearly entitled to reimbursement by the defendant for his outlay in this behalf."

The evidence in the case did not indicate that the plaintiff received any communication whatever from the Wayne Steel & Iron Co. The contract for the sale of the pipe was one which, under the provisions of the statute, was required to be signed by the party to be charged. The only memorandum in writing which came into plaintiff's hands was the order designating the kinds and quantities of pipe, fixing the prices thereof and directing the manner of shipment, which was signed by this defendant. He did not attempt to act as the agent or broker of either of the parties, in which case he would have been entitled to a commission for his services. What he did was to first secure a contract from the Wayne Iron & Steel Co., under the terms of which he was to sell the pipe to that company at a price which to

him was satisfactory; he then gave to the plaintiff an order for the pipe at lower prices. He was acting not as a broker but as a dealer buying at one price and selling at a higher price.

The judgment is affirmed.