[No. 22517. *En Banc.* January 8, 1931.]

INLAND SEED COMPANY, *Respondent,* v. WASHINGTON-IDAHO SEED COMPANY, *Appellant.*[1]

*Joseph Rosslow,* for appellant.

*Danson, Lowe & Danson,* for respondent.

MILLARD, J.—The Inland Seed Company brought this action to recover against the Washington-Idaho Seed Company a balance claimed to be due on a carload of peas, alleged to have been sold by the plaintiff to the defendant, and destroyed by a fire which burned the warehouse in which the peas were stored. From judgment consonant with findings and conclusions in favor of the plaintiff for the full amount claimed, the defendant has appealed.

[1]Reported in 294 Pac. 991.

Did the title to the peas vest in the appellant prior to their destruction? That is the question presented by this appeal, and if answered in the affirmative, it follows that the trial court correctly adjudged appellant liable for the agreed purchase price.

The facts are as follows: The written order of appellant, verbally accepted by respondent December 13, 1927, for twelve hundred sacks of Blue Bell peas, at $2.95 a hundred, f. o. b. Spokane, specified

"Shipment to be made when ready, peas, to contain not more than one per cent weevil, or more than one per cent bleached or white peas. These peas are to be shipped to C. B. Pyle, Harrisville, Mich., using shipper's order bill of lading with arrival draft attached. . . . Inspection allowed."

The contract between the parties is clear. By the foregoing agreement, the respondent was obligated to sell to the appellant twelve hundred sacks (two carloads) of peas at a specified price, f. o. b. Spokane, the peas to contain not more than a certain percentage of weevil or white peas and, when ready, were to be shipped to C. B. Pyle, Harrisville, Michigan, with bill of lading, arrival draft attached, and inspection allowed. When the peas were ready for shipment, the parties, because of some question as to the ability of the appellant to pay for the peas, modified the agreement to provide that the peas be shipped by respondent to itself, care of a warehouse at Palouse, Washington, possession of the peas to be retained by the respondent as security until purchase price therefor was paid. Appellant's manager testified:

"We requested that the peas be delivered at Palouse instead of Harrisville, Michigan. . . . Q. Now coming back to this order and its verbal acceptance, on what condition was it accepted by Mr. Anderson [respondent's manager]? What was said about your credit and the question of your accepting the order,

and the title of the peas? A. He was unwilling to ship the peas until they were fully paid for. The original contract called for delivery under shipper's order, the possession of the peas to remain in his hands until they were fully paid for, and that portion of the contract or that feature of it was substituted by an arrangement whereby the peas were to be shipped to himself and to be under his own warehouse receipt, and he retained possession of the peas until they were paid for, because there was a question raised as to our ability to pay for the peas in any other manner. . . . The payment of the peas was to be made when we had the money available for that purpose within a reasonable length of time after the peas were put under warehouse receipt by him [respondent's manager]."

He further testified that the peas were never offered to appellant for inspection, and that appellant never demanded an inspection of this second car of peas shipped to Palouse and stored there.

Respondent's manager testified that the respondent's purpose in consigning the peas to itself was to hold the peas "as security until settlement would be made."

Pursuant to the changed agreement, the respondent, on February 16, 1928, shipped one car of peas to itself in care of a warehouse company at Palouse, Washington. Respondent paid the freight in advance and then billed the appellant for the peas, handling charges and freight. That invoice was paid. On February 25th, nine days later, another car of peas was shipped by respondent to Palouse, the peas being consigned to the respondent in care of a public warehouse at that place. On arrival of the car at Palouse, February 27, 1928, the peas were unloaded and taken in storage by the warehouse company. Warehouse receipts were issued in the respondent's name and delivered to the respondent. On March 9, 1928, eleven

days subsequent to placing of the peas in the warehouse, and after receipt of the invoice and notice of the disposition of the second carload of peas, the appellant made a payment by check of nine hundred dollars on the purchase price. Appellant's letter of March 9th, transmitting the check to respondent, reads as follows:

"Enclosed please find check for $900 to apply upon the purchase price of the car of blues, now at Palouse. We had expected to have the full amount due on this car by the middle of this week, but find that the balance will not be available until the last of next week. Trusting this will not inconvenience you, we are."

No further payment was made. The peas remained in the warehouse until April 21st, when they were destroyed by a fire which burned the warehouse in which the peas were stored.

The Uniform Sales Act (references to the 1927 supplement to Remington's Compiled Statutes) with respect to the transfer of property as between seller and buyer, and the reservation of possession of the property when goods are shipped, reads, in part, as follows:

"Sec. 5836-17. Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained, but property in an undivided share of ascertained goods may be transferred as provided in section 5836-6.

"Sec. 5836-18. (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

"Sec. 5836-19. Unless a different intention appears, the following are rules for ascertaining the in-

tention of the parties as to the time at which the property in the goods is to pass to the buyer:

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.

"Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the property does not pass until such thing be done.

"Rule 3. . . . (2). When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer: (a) when he signifies his approval or acceptance to the seller or does any other act adopting the transaction; (b) If he does not signify his approval or acceptance to the seller, but retains the goods without giving notice of rejection, then if a time has been fixed for the return of the goods, on the expiration of such time, and, if no time has been fixed, on the expiration of a reasonable time. What is a reasonable time is a question of fact. . . .

"Sec. 5836-20. (1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer.

"(2) Where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing per-

formance by the buyer of his obligations under the contract.

"Sec. 5836-22. . . . (a) Where delivery of goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery. . . ."

The evidence is undisputed that the contract of December 13, 1927, as subsequently modified by mutual agreement of the parties, provided that the peas be shipped by respondent consigned to itself in care of, and stored in, a public warehouse at Palouse, Washington; that the warehouse receipts for the peas were to be issued and retained by respondent until payment for the peas was made by appellant. Of the purchase price, appellant paid approximately one-half thereof a short time subsequent to the storage of the peas under that contract.

Under the terms of the contract, as soon as the peas arrived and were stored at Palouse, the title to the peas passed to the appellant buyer, subject to the respondent seller's right to hold the goods until payment of the agreed purchase price. Section 5836-22, Rem. 1927 Sup., clearly provides that, where—as here —the goods have been delivered to a bailee pursuant to the contract of the parties, the property in the goods being retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of delivery to the bailee.

The goods were shipped, as required by the contract, to Palouse, Washington, and by the bill of lading were deliverable to the respondent seller. Under the provisions of Rule 3, subd. (2) of Rem. 1927 Sup., § 5836-20 and the terms of the contract, the general

property in the shipment of peas to the order of the seller passed to the appellant buyer, subject to the right of the respondent consignor to retain a special property therein as security for the payment of the purchase price. The form of the bill of lading should be viewed in the light of the testimony, particularly the testimony of appellant's manager. So considered, no other interpretation is reasonable than that the bill of lading was so prepared and intended only for the purpose of securing performance of the contract.

"If it be supposed, however, that the circumstances are such that were it not for the form of the bill of lading the property would have passed, but the seller is named as consignee in the bill, an interesting situation is presented. The object of the seller in reserving the property is, it may safely be assumed, simply to secure himself in regard to the performance by the buyer of the latter's obligations. By shipping the goods the seller has lost all use of them and has definitely appropriated them to his bargain with the buyer. If the shipper could be perfectly sure that the buyer would fulfill his obligation it can hardly be doubted that he would have made a straight consignment to the latter. The effect of naming himself as consignee in the bill of lading should not be greater than is necessary to effectuate the purpose of the parties. This purpose is to reserve the property for security only . . ." Williston on Sales (2d ed.), p. 642, § 284.

In *Glanzer v. Armsby*, 100 Misc. Rep. 476, 165 N. Y. Supp. 1006, the court said, holding contrary to the buyer's contention that, where a seller ships goods consigned to itself, the shipper retains title to the goods and the property in the goods does not pass to the buyer,

"In the present case, however, the plaintiffs claim that, inasmuch as the defendant has delivered the goods to a carrier, consigned to his own order, the shipper retained title to the beans, and cannot claim

that by such shipment the property in the goods passed to the buyer and were at the buyer's risk.

"The time at which the property in goods is to pass to the buyer has always depended upon the intention of the parties. Where a seller appropriates specific goods to a contract of sale, and delivers them to a carrier, for purposes of transmission to the buyer, and after such delivery has no further duties to perform under the contract, such as delivering the goods to the buyer at a particular place, or paying the freight to a particular place, it will be presumed, unless a different intention appears, that the property in the goods passes to the buyer at the time of the delivery to the carrier. In this regard it is to be noted that this presumption is applicable, although by the terms of the contract the buyer is to pay the price before receiving delivery of the goods. See Personal Property Law, § 100 (as added by Laws 1911, c. 571), 'Rules for Ascertaining Intention' Nos. 4 and 5. The plaintiffs contend that these rules have no application to cases where the goods are consigned to the order of the seller 'notify buyer,' and they rely for authority especially on the case of *Furman v. Union Pacific R. Co.*, 106 N. Y., 579, at page 587, 13 N. E. 587. This and similar cases, however, hold only that a consignor, by consigning goods to his own order, retains as between himself and the carrier the property in the goods, and the carrier is liable for conversion if it delivers the goods, even to the buyer, without the order of the consignor and the surrender of the bill of lading. In none of these cases, however, has the court held that as between the buyer and seller such a form of shipment prevents the general property in the goods passing to the buyer subject to the right of the consignor to retain a special property in the goods as security for payment or other purpose. On the contrary, in the case of *Sawyer v. Dean*, 114 N. Y. 469, 21 N. E. 1012, the Court of Appeals, in construing a very similar contract and bill of lading, held that:

" 'The plaintiff by shipping in his own name was simply keeping the possession of the property, as he had a right to do, until it had been accepted and paid for by the defendant. By shipping in that manner he

retained and kept the lien of possession as his security for the payment of the property. The effect of the contract was to transfer the title of the property from plaintiff's assignor to the defendant, subject only to the right of the assignor to retain possession until payment should be made, as long as no credit was to be given or had been provided by the terms of the agreement.' ''

In principle the situation is the same where, as in the case at bar, the goods are, by agreement of the parties, stored in a warehouse and the warehouse receipts for the goods are issued to and retained by the seller as security for payment of the purchase price.

"Sec. 5836-19. Rule 4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

"(2) Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section 5836-20. This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words 'collect on delivery' or their equivalents.

"Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the

buyer or have reached the place agreed upon.'' Rem. 1927 Sup., § 5836-19.

■ Appellant contends that the order was to ship the goods subject to inspection; that the opportunity was not afforded it to make such inspection to ascertain whether the percentage of weevil and white peas exceeded a stated percentage, as prescribed by the contract; and that the goods could not be appropriated to the contract with the assent of the buyer until the buyer has so manifested his approval of the quality of the goods as to preclude him from subsequently giving notice of rescission.

The place of inspection, where no agreement has been made to the contrary, is the destination of the goods. Under the contract the destination of the peas —the place of delivery—was Palouse, Washington; and the place of inspection under the contract and under the statute was Palouse. There the goods remained in storage for two months prior to their destruction by fire awaiting payment by the appellant buyer of the balance due on the purchase price. Delivery to the bailee under the facts of this case was delivery to buyer. Of course the appellant buyer had the right (Rem. 1927 Sup., § 5836-47), though the contract contained no provision therefor, to inspect within a reasonable time the goods before acceptance of and payment for the same.

"Sec. 5836-47 . . . (2) Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract.'' Rem. 1927 Sup. 5836-47.

Surely two months afforded a reasonable opportunity to appellant to examine the peas to ascertain whether they were in conformity with the contract.

Appellant's unqualified assent to the delivery to the warehouse, under the conditions herein recited, was an acceptance of the title.

"The defendant insists that the goods are not appropriated to a contract with the assent of the buyer until the buyer has so manifested his approval of their quality as to preclude him thereafter from giving notice of rescission. Pers. Prop. Law, § 128, subd. 1; Id. § 129. In that view, the passage of title may be indefinitely postponed for the reasonable time within which a buyer is privileged to return goods found to be defective will vary with many circumstances, as, for instance, the nature of the defects, whether patent or concealed. *Schnitzer v. Lang,* 239 N. Y. 1, 145 N. E. 65; *Bierman v. City Mills Co.,* 151 N. Y. 482, 45 N. E. 856, 37 L. R. A. 799, 56 Am. St. Rep. 635. We think assent to appropriation is something more immediate and certain. It does not signify an acceptance so definite and deliberate as to bar rescission for defects. Williston, Sales, § 482. It signifies the buyer's willingness to take as his own the goods appropriated by the seller, subject to rescission and return if defects are afterwards discovered. . . . This does not mean that a buyer is helpless if the goods when they reach their destination are found to be defective. His assent to the appropriation of goods in a deliverable state is not assent to the appropriation of any goods though of a kind or a quality at variance with the contract. On the other hand, his assent will stand, and may not be retracted, if the variance is pretended. There is no distinction in this respect between delivery to the buyer through a carrier or other intermediary and delivery to the buyer personally. The question in each case is whether delivery is made in such circumstances as to indicate assent to the appropriation by the seller. . . .

"When we speak of delivery, we must be on our guard nonetheless, against misleading ambiguities. Delivery to be operative as a transfer of the property must be assented to by the buyer. . . . The examination is waived, however, in so far as it is a condition precedent to the transfer of the property, when

there is an assent to delivery without reservation or condition accompanying the receipt and qualifying or postponing or neutralizing its effect. Examination prior to such acceptance is indeed, as we have seen, to be permitted 'on request' (Pers. Prop. Law § 128, subd. 2), yet even when requested, it is immediate and summary, closing at least in ordinary conditions, with the close of the day, for which reason tender must be made at a seasonable hour *(Croninger v. Crocker,* 62 N. Y. 151).

"Undoubtedly a right survives to examine and reject thereafter, but it survives as a condition subsequent, and its exercise does not bar an action for the price if the goods rejected were in truth in a deliverable state. When we speak of the condition as subsequent, we mean that assent to the appropriation stands unless revoked for a sufficient cause. It is a different question whether in the event of revocation, the seller is relieved of the burden of proving as a condition precedent to recovery that the goods, though appropriated with assent, conform in kind and quality to those called for by the contract. Williston Sales, §§ 473, 478; Benjamin, Sales, (6th ed.) p. 400; Pers. Prop. Law, § 100, rule 4, subd. 1. Enough for present purpose that the effect of receipt without reservation or disclaimer is to defer the examination indefinitely for the convenience of the buyer. Williston, Sales, § 474. True, dissent must be announced within a reasonable time (Pers. Prop. Law, § 128 subd. 1; § 129.) but a reasonable time is without determinable limits and varies with the facts. If title does not pass when there is assent to a consummated delivery, the seller will have to bear the risk of the destruction of the goods during a period of indeterminate duration, though he has complied with his contract and the grounds of rejection are capricious or pretended. There can be little doubt that the announcement of such a rule will be a shock to the average merchant who believes that he is through with the transaction upon delivery accepted by the buyer, unless indeed he has made delivery of goods that are defective. If conflicting interpretations of the statute are reasonably possible, our preference should be for the one that

keeps it in accord with mercantile practice. There is some suggestion, it is true, of a rule that may be said to occupy a middle ground. Acceptance after inspection survives, we are told, as a condition precedent even though delivery is perfected, yet at some intermediate point, before a reasonable time for rejection has expired it fades into a condition subsequent. We find no basis in the statute for a distinction that would complicate by the introduction of new refinements an already complicated subject. Assent to delivery, unless otherwise qualified, is assent to appropriation, and thus, subject to rescission, an acceptance of the title.'' *Glass & Co. v. Misroch,* 239 N. Y. 475, 147 N. E. 71.

The judgment is affirmed.

MITCHELL, C. J., PARKER, MAIN, TOLMAN, HOLCOMB, BEALS, and BEELER, JJ., concur.