BECO, INC. *v.* MINNECHAUG GOLF COURSE, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 14-668-24269

Argued May 6—decided August 30, 1968

*Leon Podrove,* of Manchester, for the appellant (defendant).

*Arnold E. Buchman,* of Hartford, for the appellee (plaintiff).

DEARINGTON, J. The plaintiff, in its complaint, alleges delivery of certain goods on June 24 and 27, 1966, and thereafter, on August 1, 1966, the defendant notified the plaintiff that it refused to accept the remaining goods. The goods refused, so it is alleged, were specially manufactured and could not be resold at reasonable prices, and the plaintiff was ready, able and willing to deliver the goods. The amount sought by the plaintiff was the balance remaining due for the goods delivered and the cost price of the goods refused. The defendant, in general, denied the allegations and by way of a special defense alleged that the goods delivered were of poor quality and design and as a result were reshipped to the plaintiff, which refused acceptance. By way of a counterclaim, the defendant alleged breach of warranty and claimed damages. Judgment having been rendered for the plaintiff, the defendant has appealed, assigning error in the denial of its motion to correct the finding and further that the subordinate facts do not support the court's conclusions.

The court found that the plaintiff was engaged in the business of selling restaurant equipment and furnishings. It neither manufactured nor carried a large stock of such equipment. The defendant

owned and operated a golf course in Glastonbury. In the fall of 1965, the defendant contracted to construct a new clubhouse and as a part of the plans, prepared by an architect, it included the installation of a restaurant-coffee shop. Sometime in the latter part of February or early part of March, 1966, the plaintiff's agent, Joseph Carcio, and the defendant's agent, Graham Clark, began discussions relative to the furnishing of equipment for the restaurant. Many consultations were had between Carcio and Clark, and the former took measurements from the architect's plans as well as the building, which was then under construction. The plaintiff prepared numerous sketches and layouts for the defendant. On April 21, 1966, the defendant executed an order for itemized equipment and paid the defendant $2950.15 on account. Some of the items were selected from catalogs, while others were carried in stock by the plaintiff. As a result, part of the material, of a value of $6952.62, was delivered at the clubhouse on June 24 and June 27, 1966. The plaintiff then engaged in setting up this equipment in a temporary position. Thereafter, the defendant refused to allow continuation of the work. On June 29, the defendant for the first time consulted his architect in regard to the equipment and then proceeded to rearrange the equipment without consulting the plaintiff. The defendant then advised the plaintiff that the counter as set up in the proposed plans extended twenty inches into a doorway entrance, that two stools along the counter interfered with the passage of customers through a proposed doorway and, further, that the overhang of a proposed shelf should be changed. The plaintiff agreed to eliminate or correct these minor defects. The defendant then discussed the possibility of converting the "wall" type equipment which had been purchased to an "island" type. The plaintiff agreed to

see what conversion could be made. The defendant, however, refused to deal any further with the plaintiff and on July 29 attempted to return all the equipment, but the plaintiff refused to accept it and it remained in the possession of the defendant. The finding also disclosed that during the course of the trial the plaintiff learned for the first time that the defendant complained of alleged defects which the plaintiff could have remedied within a reasonable time if given the opportunity.

The court concluded that the plaintiff was entitled to judgment on its complaint based on the contract price and also entitled to judgment on the defendant's counterclaim. The court further concluded that the plaintiff was willing to cure seasonably any defect or nonconforming use, as provided for in § 42a-2-508 (2) of the General Statutes, that the defendant had waived any right to any implied warranty of suitability by failing to reject the goods within a reasonable time after delivery; § 42a-2-315; and, further, that the defendant had failed to allow the plaintiff to cure any alleged defect. § 42a-2-605 (1) (a), (b). The court then computed the damages to be the price of the goods delivered and the price of the goods especially fabricated and ready for delivery. The court allowed a credit for the payment made, the cost of correcting a counter, and the cost of two stools.

The defendant in its brief has reduced its assignment of errors to two questions, each relating to damages: (1) Was it proper to award damages measured by the contract price or should recovery be confined to damages for nonacceptance as provided for in § 42a-2-708 of the General Statutes? (2) Should damages be reduced by the expense saved by the plaintiff in consequence of the buyer's breach as provided in § 42a-2-708 (1)?

The defendant concedes that the judgments both on the complaint and on the counterclaim cannot be disturbed. What the defendant contends is that the trial court applied the wrong measure of damages in computing the amount of the judgment on the complaint, that is, on the facts found the court erred in adopting the measure of damages provided for under the provisions of § 42a-2-709.[1] The defendant argues that on the subordinate facts the court was limited to the measure of damages as provided in § 42a-2-708;[2] the plaintiff contends that its action

---

[1] "Sec. 42a-2-709. ACTION FOR THE PRICE. (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under section 42a-2-710, the price (a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and (b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing. (2) Where the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold. (3) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated as provided in section 42a-2-610, a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for non-acceptance under the preceding section."

[2] "Sec. 42a-2-708. SELLER'S DAMAGES FOR NON-ACCEPTANCE OR REPUDIATION. (1) Subject to subsection (2) and to the provisions of section 42a-2-723 with respect to proof of market price, the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender. and the unpaid contract price together with any incidental damages provided in section 42a-2-710, but less expenses saved in consequence of the buyer's breach. (2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in section 42a-2-170, due allowance for cost reasonably incurred and due credit for payments or proceeds of resale."

was brought under § 42a-2-709. This section provides, inter alia, that when the buyer fails to pay the price of goods accepted the seller may recover the price. It also provides that if the buyer wrongfully rejects goods or revokes acceptance of the goods or has failed to make a payment due or has repudiated as provided in § 42a-2-610, a seller who is not entitled to the price under § 42a-2-709 shall be awarded damages for nonacceptance under § 42a-2-708. It should be noted that at this posture of the case we are concerned solely with the goods claimed to have been delivered. The thrust of the defendant's argument is that there was no acceptance and therefore § 42a-2-709 was not applicable, and that in such an event § 42a-2-708 came into operation. While it is true that the finding does not directly assert that there was an acceptance, it nevertheless does show that there was no rejection of the goods within a reasonable time after delivery. The court undoubtedly had in mind § 42a-2-606 (1), which provides that "[a]cceptance of goods occurs when the buyer . . . (b) fails to make an effective rejection as provided by subsection (1) of section 42a-2-602, but such acceptance does not occur until the buyer has a reasonable opportunity to inspect them." Section 42a-2-602 (1) provides: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." The court found that the defendant at no time notified the plaintiff it was rejecting the goods but did attempt to return them one month after delivery. What shall be deemed a reasonable time must be determined by the circumstances of each case. *Lockwood* v. *Crawford,* 18 Conn. 361, 372; see 15 Am. Jur. 2d, Commercial Code, § 9. It has been held that when the facts are undisputed the question of what is a reasonable time for rescission is one of law to be determined by the court. 17

Am. Jur. 2d, Contracts, § 510. On the facts, it cannot be said that the court erred in determining that the defendant had failed to make an effective rejection within a reasonable time. The failure of an effective rejection within a reasonable time is evidence of an election to accept which, though not conclusive, requires satisfactory explanation. *Emery Thompson Machine & Supply Co.* v. *Graves,* 91 Conn. 71, 74.

Moreover, as found by the court, the plaintiff, upon being notified of the alleged defects, agreed to rectify them, but the defendant refused such curative tender. The plaintiff's proffered offer to cure the defects reasonably precluded the application of § 42a-2-708, in the absence of any showing that time was of the essence of the contract. See *Wilson* v. *Scampoli,* 228 A.2d 848 (D.C. App.) ; *Appleton State Bank* v. *Lee,* 33 Wis. 2d 690. Implicit within the finding that there had been no effective rejection was that an acceptance had occurred. § 42a-2-606 (1) (b). This being so, the damages could only be assessed, as they were, in accordance with the provisions of § 42a-2-709.

We now consider the defendant's second assignment of error. The defendant claims that it was entitled to mitigate the damages as provided for in § 42a-2-708. It contends that the cost of setting the equipment in place and fabricating and installing a fan was a proper deduction and should have been reflected in the amount of damages as computed by the court. It is conceded that the amounts involved were a part of the contract price. The strength of this argument would only become a factor had the trial court awarded damages under § 42a-2-708. There is no provision in § 42a-2-709 for crediting expenses saved by a seller in consequence of a buy-

er's breach. Since we have heretofore determined that the court committed no error in applying the provisions of § 42a-2-709, this assignment must fail.

There is no error.

In this opinion WISE and KINMONTH, Js., concurred.

