[No. 682-1. Division One—Panel 1. September 5, 1972.]

CERVITOR KITCHENS, INCORPORATED, *Appellant,* v. JEANNETTE CHAPMAN, *Respondent.*

WILLIAMS, J., dissents by separate opinion.

*Rush, Lynch & Hayes* and *Frederick B. Hayes,* for appellant.

*Comfort, Dolack, Hansler & Billett* and *Richard J. Dolack,* for respondent.

HOROWITZ, C.J.—Cervitor Kitchens, Inc. sued Jeannette Chapman as executrix of the will of Howard J. Chapman, deceased, to recover the sale price of four kitchen units sold to Chapman for installation in a dormitory at Pacific Lutheran University at Tacoma. Chapman then filed a third-

party complaint against Pacific Lutheran University, Inc. At the conclusion of plaintiff's case, the court granted Chapman's motion to dismiss Cervitor's action. Chapman thereupon agreed to dismissal of its third-party complaint. Cervitor appeals the dismissal of its action against Chapman.

The facts are undisputed. Howard Chapman, prior to his death, operated a plumbing and heating company in Tacoma, Washington, as a sole proprietor. Cervitor Kitchens, Inc. is a California corporation engaged in the merchandising business. Prior to January 10, 1967, Chapman was the prime contractor for the plumbing work in the construction of a dormitory for Pacific Lutheran University, Inc. On January 10, 1967, Chapman purchased from Cervitor four kitchen units to be installed in the dormitory for a price of $1,180, f.o.b. job site. Subsequently, by change order, the price was increased by $26 per unit, or a total of $104.

On May 4, 1967, Chapman received from Cervitor four kitchen units enclosed in shipping crates or cartons. The units themselves were not inspected on behalf of Chapman, although Chapman's manager was present when the units were delivered and noticed some minor exterior shipping damage on two of the crates. The manager then caused the units enclosed in their shipping crates or cartons to be stored in a separate room at the dormitory then under construction. No effort was made on behalf of Chapman to notify the architect and engineer of the receipt of the units, and no inspection was made of the units until shortly after installation. About August 5, 1967, Chapman caused the units to be removed from the crates and they were installed without further inspection in the dormitory.

A few days later Chapman notified the engineer that the units had been installed. Shortly thereafter, the engineer telephoned Chapman that the units were of poor quality and did not comply with specifications. He confirmed his and the architect's disapproval to Chapman by letters dated August 18 and 25, 1967. The defects complained of included chipped and rough edges on the stove sections which did

not fit properly with the adjoining surface, poorly fitted doors, a poorly installed aluminum panel along one side of the unit, and inadequate hinges on the refrigerator section. Meanwhile, Chapman's manager notified Cervitor that the units did not comply with the specifications and would be rejected. Later Chapman caused the units to be shipped back to Cervitor, who refused to accept them. They were then stored in Los Angeles and ultimately sold for storage charges.

The sole question in the case is whether Chapman must be deemed to have accepted the four kitchen units because of his failure to inspect and reject them for a period of approximately 3 months after delivery and because of his installation of the units without prior inspection and rejection. Cervitor contends Chapman waited too long to inspect and reject the units, and his installation of the units without inspection further precludes him from rejecting them.

■ The Uniform Commercial Code, RCW 62A.2-606, went into effect on July 1, 1967. Prior thereto the Uniform Sales Act, §§ 47-48, was in effect. RCW 63.04.480, 63.04.490. Under both acts, the buyer was given a reasonable opportunity to examine goods delivered for the purpose of ascertaining whether they were in conformity with the contract. RCW 63.04.480, 62A.2-606. Furthermore, under both acts, the buyer, if he did any act in relation to the goods inconsistent with the seller's ownership, was deemed to have accepted the goods so as to become liable for the price. RCW 63.04.490, 62A.2-606. Such acceptance under both the Uniform Sales Act and under the Uniform Commercial Code did not bar an action for damages for breach of any promise or warranty. RCW 63.04.500, 62A.2-714, 62A.2-715. See generally 3 S. Williston, Sales of Goods §§ 470, 476, 483, 484 (rev. ed. 1948); R. Nordstrom, Law of Sales §§ 142, 150, 156 (1970).

If the facts are disputed, the question of what is a reasonable time is for the trier of the fact. Kleeb v. Long-Bell Lumber Co., 27 Wash. 648, 68 P. 202 (1902); Beco, Inc. v. Minnechaug Golf Course, Inc., 5 Conn. Cir. Ct. 444, 256

A.2d 522 (1968). Similarly, if the facts are disputed as to whether the buyer's acts are inconsistent with the seller's ownership, a fact question is presented.

 If the facts are undisputed concerning the duration of the time for inspection, the question of whether the goods were retained for an unreasonable time becomes one for the court to decide. *Kleeb v. Long-Bell Lumber Co., supra.* Unless the buyer can provide a satisfactory explanation for delay otherwise unreasonable, the court as a matter of law must hold that the buyer has accepted the goods and is liable for the price. *Beco, Inc. v. Minnechaug Golf Course, Inc., supra.*

No doubt difficulties are encountered in applying these principles to varying states of fact and the holdings vary. However, in a number of cases inspection and rejection of goods sold have been held unreasonably delayed as a matter of law so as to entitle the seller to the price of the goods sold. *Inland Seed Co. v. Washington-Idaho Seed Co.,* 160 Wash. 244, 294 P. 991 (1931) (2 months); *Kleeb v. Long-Bell Lumber Co., supra* (2 months); *Carlsen v. Ziehme,* 53 Fla. 235, 44 So. 181 (1907) (2 months); *McNeill & Higgins Co. v. Martin,* 160 La. 443, 107 So. 299 (1926) (3 months); *Lukens v. Crozier,* 84 Pa. Super. 402 (1925) (6 weeks); *Frankel v. Foreman & Clark, Inc.,* 33 F.2d 83 (2d Cir. 1929) (4 months); *Boessneck v. William Taylor Son & Co.,* 46 Misc. 63, 91 N.Y.S. 360 (1904) (5 months); *House of Price, Inc. v. Kliegman Bros.,* 126 N.Y.S.2d 764, *aff'd* 283 App. Div. 1037, 131 N.Y.S.2d 875 (1953) (5 months). *See Moore v. Foss & Co.,* 18 F.2d 635 (D. Mass. 1927) (2 months).

In *Inland Seed Co. v. Washington-Idaho Seed Co., supra,* the subject matter of the sale was a carload of peas packed in sacks and shipped to a warehouse pursuant to a sales contract. The peas were later destroyed when the warehouse burned down. The buyer had not opened the sacks of peas for inspection after the peas were unloaded and stored in the warehouse. The trial court held that the peas were

deemed accepted by the buyer. The Supreme Court, in affirming, said:

Surely two months afforded a reasonable opportunity to appellant to examine the peas to ascertain whether they were in conformity with the contract.

160 Wash. at 253.

To provide an excuse for what would otherwise be unreasonable delay in inspecting goods sold and delivered, prior inspection must be wholly impracticable. It is not enough to provide such an excuse if the inspection is merely inconvenient and time-consuming. *Pacific Commercial Co. v. Greer*, 129 Cal. App. 751, 19 P.2d 543 (1933). In the instant case, there is no evidence that it was not wholly practicable to open the crates containing the units and inspect the units to see that they conformed to the contract; that the inspection would have been any more expensive than it was when the inspection was actually had after installation; that, after the crates were opened, they could not have been closed again to protect the units if that was necessary; that, had the crates been opened and then closed, they would have been any more likely to have been stolen or the subject of pilferage; that the room in which the units were placed was not entirely safe from pilferage or damage, whether or not the units remained in their crates; that the installation of the units was necessary to enable a proper inspection to take place. Although there is evidence that it is customary to store commercial fixtures on the job sites until they are installed, there is no evidence —assuming it would be admissible—that it is customary to store the units for the length of time here involved without inspection. In addition, there is no evidence that the seller had agreed that they might be so stored or installed without inspection. The findings entered provide neither explanation nor justification for delaying the inspection over a period of more than 3 months and delaying that inspection until after Chapman had caused the units to be installed.

■ Furthermore, the installation without inspection

after over 3 months of delay—the deficiencies claimed being readily apparent upon inspection after the units were taken from the crates and before installation—is inconsistent with the seller's ownership as a matter of law. This conclusion is consistent with the rationale followed in installation cases. In *United States v. Crawford*, 443 F.2d 611 (5th Cir. 1971), a government contractor received and installed in place on a navy base several fuel filter/separator units. The court held the installation "inconsistent with the seller's ownership" within the meaning of Georgia's Code, UCC § 2-606(1)(c). The buyer, accordingly, was precluded from revoking the purchase. In *Park County Implement Co. v. Craig*, 397 P.2d 800 (Wyo. 1964), the court held that the buyers of a truck chassis and cab accepted them "when they began installing a hoist and dump bed on the vehicle." Such an act was held inconsistent with the seller's ownership. The buyer, accordingly, was required to pay the contract price for the goods accepted under §§ 2-606(1)(c) and 2-607(1) of the Wyoming Uniform Commercial Code.

The remaining question is as to the relief to be awarded. The testimony here concerning acceptance of the kitchen units has been received almost entirely from Chapman's general manager, the engineer who inspected the units, and the architect. No material disputed issue of fact concerning such acceptance exists. Under these circumstances, Cervitor is entitled to payment of the agreed purchase price. *See Grandin v. Emmons*, 10 N.D. 223, 86 N.W. 723 (1901). *See generally* 5 Am. Jur. 2d *Appeal and Error* § 968 (1962). However, the issue of Chapman's right over against Pacific Lutheran University, Inc., and the further issue of Chapman's damages for breach of contract against Cervitor, have not been tried and potential fact issues, therefore, remain.

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment for Cervitor Kitchens, Inc. against Jeannette Chapman, as executrix of the estate of Howard J. Chapman, deceased, in the sum of $1,284, legal interest and costs, subject nevertheless to

whatever rights said executrix may have against Pacific Lutheran University, Inc. and also against Cervitor Kitchens, Inc. for damages for breach of contract.

CALLOW, J., concurs.

WILLIAMS, J. (dissenting)—The correct rule to be applied to determine whether the question of rejection within a reasonable time is one of fact or of law is stated in *Kleeb v. Long-Bell Lumber Co.*, 27 Wash. 648, 68 P. 202 (1902), quoting from *Remington v. Fidelity & Deposit Co.*, 27 Wash. 429, 67 P. 989 (1902) as follows:

> "And whether a time is reasonable or not depends upon the circumstances of the particular case. Where the facts are undisputed *and the minds of reasonable men may not differ upon them*, the question becomes one at law for the court; but where reasonable minds may differ upon a given state of facts, the question then is for the jury, *and not for the court.*"

(Italics ours.) The majority opinion omits the italicized portion of the rule. I believe under the facts of this case that reasonable minds may differ as to when the packing cases should have been opened and the inspection made.

Howard Chapman, the prime contractor for plumbing work in the construction of the dormitory, testified as follows: "We had no way of checking the quality without opening the packing cases which then made the units vulnerable to damage while in storage." When asked, "Do suppliers who deal in commercial fixtures such as this, recognize that their merchandise will frequently be stored on job sites?" he answered, "Yes, sir, that is correct."

It is illogical to suppose that each of the myriad of commercial items which went into the 9-story building should have been unwrapped and inspected upon delivery to the job site. I would affirm.

Petition for rehearing denied October 5, 1972.

Appealed to Supreme Court October 11, 1972.