[No. 42592. En Banc. August 2, 1973.]

CERVITOR KITCHENS, INC., *Respondent,* v. JEANNETTE CHAPMAN, *as Executrix, Appellant,* PACIFIC LUTHERAN UNIVERSITY, INC., *Respondent.*

*Comfort, Dolack, Hansler & Billett,* by *Richard J. Dolack,* for appellant.

*Rush & Hayes,* by *Frederick B. Hayes,* for respondent.

UTTER, J.—A suit by Cervitor Kitchens, Inc. against the executrix of the will of Howard J. Chapman was dismissed at the close of Cervitor's case by the trial court. We affirm the reversal by the Court of Appeals on the issue of whether installation is an act inconsistent with the seller's ownership.[1]

**Cervitor Kitchens, Inc. sued Jeannette Chapman as executrix of the will of Howard J. Chapman, deceased, to recover the sale price of four kitchen units sold to Chapman for installation in a dormitory at Pacific Lutheran University at Tacoma. Chapman then filed a third-party complaint against Pacific Lutheran University, Inc. At the conclusion of plaintiff's case, the court granted Chapman's motion to dismiss Cervitor's action. Chapman thereupon agreed to dismissal of its third-party complaint.

The facts are undisputed. Howard Chapman, prior to his

---

[1] Portions of the Court of Appeals opinion (7 Wn. App. 520, 500 P.2d 783 (1972)) are adopted in full by this court. These portions are set off by asterisks at the beginning and end of each section.

death, operated a plumbing and heating company in Tacoma, Washington, as a sole proprietor. Cervitor Kitchens, Inc. is a California corporation engaged in the merchandising business. Prior to January 10, 1967, Chapman was the prime contractor for the plumbing work in the construction of a dormitory for Pacific Lutheran University, Inc. On January 10, 1967, Chapman purchased from Cervitor four kitchen units to be installed in the dormitory for a price of $1,180, f.o.b. job site. Subsequently, by change order, the price was increased by $26 per unit, or a total of $104.\*\*

On May 4, 1967, Chapman received from Cervitor four kitchen units enclosed in shipping crates or cartons. The units themselves were not inspected at the time of delivery although Chapman's manager was present when the units were delivered and noticed some minor exterior shipping damage on two of the crates. The manager then caused the units enclosed in their shipping crates or cartons to be stored in a separate room at the dormitory then under construction. About August 5, 1967, Chapman removed the units from the crates and installed them in the dormitory.

A few days later Chapman notified the consulting engineer employed by the architect for Pacific Lutheran University that the units had been installed. The engineer was an agent of the architect who in turn was an agent of the university. Shortly thereafter, the engineer telephoned Chapman that the units were of poor quality and did not comply with specifications. He confirmed his and the architect's disapproval to Chapman by letters dated August 18 and 25, 1967. The defects complained of were chipped and rough edges on the stove sections which did not fit properly with the adjoining surface, poorly fitted doors, a poorly installed aluminum panel along one side of the unit, and inadequate hinges on the refrigerator section. Meanwhile, Chapman's manager notified Cervitor that the units did not comply with the specifications and would be rejected. Later Chapman caused the units to be shipped back to Cervitor, who refused to accept them. They were then stored in Los Angeles and ultimately sold for storage charges.

The issue for determination in this case is whether Chapman must be deemed to have accepted the units, either due to his failure to inspect and reject them for a period of approximately three months after delivery, or due to his installation of the units without prior inspection and rejection. We hold under the facts of this case, acceptance took place by Chapman's installation and cannot agree with the Court of Appeals that, as a matter of law, the 3-month time delay in failing to inspect and accept or reject the goods constituted an acceptance.

**The Uniform Commercial Code, RCW 62A.2-606, went into effect on July 1, 1967. Prior thereto the Uniform Sales Act, §§ 47-48, was in effect. RCW 63.04.480, 63.04.490. Under both acts, the buyer was given a reasonable opportunity to examine goods delivered for the purpose of ascertaining whether they were in conformity with the contract. RCW 63.04.480, 62A.2-606. Furthermore, under both acts, the buyer, if he did any act in relation to the goods inconsistent with the seller's ownership, was deemed to have accepted the goods so as to become liable for the price. RCW 63.04.490, 62A.2-606. Such acceptance under both the Uniform Sales Act and under the Uniform Commercial Code did not bar an action for damages for breach of any promise or warranty. RCW 63.04.500, 62A.2-714, 62A.2-715. *See generally* 3 S. Williston, *Sales of Goods* §§ 470, 476, 483, 484 (rev. ed. 1948); R. Nordstrom, *Law of Sales* §§ 142, 150, 156 (1970).**

■ **[I]nstallation without inspection after over 3 months of delay—the deficiencies claimed being readily apparent upon inspection after the units were taken from the crates and before installation—is inconsistent with the seller's ownership as a matter of law. This conclusion is consistent with the rationale followed in installation cases. In *United States v. Crawford,* 443 F.2d 611 (5th Cir. 1971), a government contractor received and installed in place on a navy base several fuel filter/separator units. The court held the installation "inconsistent with the seller's ownership" within the meaning of Georgia's Code, U.C.C. § 2-

606(1)(c). The buyer, accordingly, was precluded from revoking the purchase. In *Park County Implement Co. v. Craig*, 397 P.2d 800 (Wyo. 1964), the court held that the buyers of a truck chassis and cab accepted them "when they began installing a hoist and dump bed on the vehicle." Such an act was held inconsistent with the seller's ownership. The buyer, accordingly, was required to pay the contract price for the goods accepted under §§ 2-606(1)(c) and 2-607(1) of the Wyoming Uniform Commercial Code.**

■ Inspection after installation by Mr. Bogue, the engineer, an agent of the architect who was in turn agent of the owner, Pacific Lutheran University, has no bearing on the acceptance by Chapman. When Chapman performed acts inconsistent with Cervitor's ownership, at that point title passed to Chapman. If Chapman, as buyer of the units, was to reject them effectively, he had to do so before installation. There is no contention the defects were not readily observable in the time interval between the uncrating of the units and their installation by Chapman. The subsequent inspection by agents of the owner and their rejection are irrelevant to the legal dispute between Chapman and Cervitor under the facts of this case, showing installation.

The trial court's findings and oral opinion do not address themselves to the issue of installation being inconsistent with the seller's ownership. They relate only to Chapman's obligation to open the cartons prior to the time he decided to install the units and the issue of what was a reasonable time in which to notify Cervitor of the defects. They at no point deal with the installation issue and there are no findings of fact on this specific issue before us.

■ We can agree with most of the statements of the Court of Appeals regarding the law on the issue of what was a reasonable time for inspection of the units after delivery. Our only point of disagreement is with the application of that law to this case and their interpretation of the holding in *Pacific Commercial Co. v. Greer*, 129 Cal. App. 751, 19 P.2d 543 (1933). As we read that case, we believe it stands primarily for the proposition that reten-

tion beyond a reasonable time for examination and communication with the seller, standing alone, will be regarded as warranting the conclusion that the buyer has accepted the goods and become liable. In *Pacific Commercial,* goods were shipped in a time period from August 1, 1918 to August 9, 1919 and not rejected until November 1920. It is in that context the court held that to provide an excuse for what would otherwise be unreasonable delay in inspecting goods sold and delivered, prior inspection must be wholly impracticable.

█ The trial court's oral opinion which we may look to in interpreting its written findings of fact, notes on the issue of unreasonable delay in inspection and notification that "the sole question is whether or not notice was given in a reasonable length of time after the articles were delivered to the job site out there for the Defendant, Chapman Plumbing." The court's subsequent findings indicate notice was given within the reasonable time period. We believe these findings are determinative on that issue. There was testimony in the record that it was customary to store commercial fixtures on job sites and the findings are therefore supported by substantial evidence in the record.

█ The remaining question is as to the relief to be awarded. The testimony here concerning acceptance of the kitchen units has been received almost entirely from Chapman's general manager, the engineer who inspected the units, and the architect. No dispute of a material issue of fact concerning such acceptance exists. Under these circumstances, Cervitor is entitled to payment of the agreed purchase price. *See Grandin v. Emmons,* 10 N.D. 223, 86 N.W. 723 (1901). *See generally* 5 Am. Jur. 2d *Appeal and Error* § 968 (1962). However, the issue of Chapman's right over against Pacific Lutheran University, Inc. and the further issue of Chapman's damages for breach of contract against Cervitor, have not been tried and potential fact issues, therefore, remain.

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment for Cervitor

Kitchens, Inc. against Jeannette Chapman, as executrix of the estate of Howard J. Chapman, deceased, in the sum of $1,284, legal interest and costs, subject nevertheless to whatever rights said executrix may have against Pacific Lutheran University, Inc. and also against Cervitor Kitchens, Inc. for damages for breach of contract.

HALE, C.J., FINLEY, HAMILTON, STAFFORD, and BRACHTEN-BACH, JJ., concur.

WRIGHT, J. (dissenting)—I dissent.

I fully agree with that portion of the majority opinion which states that the act of storage for 3 months was not inconsistent with the ownership of the seller. It was well known by both parties that the units in question were to be installed in a building then under construction. Seller as well as buyer knew that the units would not be installed until the building had reached the proper stage of completion. It would have been uneconomical and would have exposed the units to unnecessary risk of damage to have unpacked them until just before installation. This is in accordance with the trial court's finding of fact No. 5.

Upon the other issue, whether the installation constituted an acceptance by the buyer, I disagree with the majority. The units in question were not those ordered by the buyer, a change took place as a result of directions from the architect representing Pacific Lutheran University.

The buyer here installed the units which had been ordered by the architect. The architect and his employees were the only ones with authority to accept or reject the units. The purchase order contained the words: "Arranged to suit architect-engineer". Testimony indicated those words referred to arrangement of the burners, the very matter upon which the units were rejected. I cannot agree with the statement of the majority

Inspection after installation by Mr. Bogue, the engineer, an agent of the architect who was in turn agent of the owner, Pacific Lutheran University, has no bearing on the acceptance by Chapman.

What is done must be viewed in the light of what is reasonable under the circumstances. Here the parties both knew the decision of the architect would be final as to acceptance or rejection of the units. *Sloane v. State,* 161 Wash. 414, 297 P. 194 (1931).

The testimony of Mr. Arnold Nicholson Bogue, a consulting engineer, employed by the architect as the mechanical engineer on the project, clearly shows that rejection of the units was for the reason they did not meet specifications. He said: "We felt they weren't the quality of unit we specified." At another point he explained the units would be hard to keep sanitary, and were not finished as specified.

The parties may contract as to the time and place of inspection. *National Grocery Co. v. Pratt-Low Preserving Co.,* 170 Wash. 575, 17 P.2d 51 (1932). Contract terms may result from an express or implied contract or from the conduct of the parties or from the customs of the trade. RCW 63.04.720. Here the conduct of the parties as well as the custom of the trade clearly indicated an intention that the decision of the architect and of his agent, the mechanical engineer, would be the controlling decision as to acceptance or rejection of the units.

The buyer acted promptly to notify seller's agent upon being informed by the engineer of the rejection. The buyer attempted to telephone Mr. Henry Love, agent for Cervitor Kitchens, Inc., immediately upon receiving oral notice of rejection from Mr. Bogue, even before receiving the formal letter of rejection. After 2 days of effort he located Mr. Bogue in San Francisco and notified him of the rejection and then promptly furnished a copy of the letter of rejection.

It was said in *Pedrini v. Mid-City Trailer Depot, Inc.,* 1 Wn. App. 56, 59, 459 P.2d 76 (1969):

"Diligence in rescission is a relative question, and whether or not there has been an unreasonable delay in a given case depends upon the particular circumstances of that case." *Eliason v. Walker,* 42 Wn.2d 473, 477, 256 P.2d 298, 300 (1953).

In this connection, it must be remembered that the entire construction project was under a rigid time schedule. Each contractor was required to do his part of the work promptly in order to avoid delay to other parts of the work. Under all of the circumstances, I believe buyer acted reasonably in this matter. I would affirm the trial court.

ROSELLINI and HUNTER, JJ., concur with WRIGHT, J.